## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **MATTHEW RODRIGUEZ; and** | § | |
| **OTIS CLAYTON,** *individually* | § | Case No.: |
| *and on behalf of those similarly situated,* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CLASS ACTION** |
| **vs.** | § | |
| | § | |
| **JPAY, INC., and** | § | |
| **KEEFE COMMISSARY NETWORK, LLC,** | § | |
| | § | **DEMAND FOR JURY TRIAL** |
| | § | |
| **Defendants.** | § | |
| | § | |

## CLASS ACTION COMPLAINT

Plaintiffs Matthew Rodriguez and Otis Clayton, by and through their counsel, Scott Hirsch Law Group, PLLC, Entin Law Group, P.A., and Rodriguez Law & Advocacy, P.A., bring this class action lawsuit pursuant to 42 U.S.C. § 1983 and Florida common law, and respectfully request this Court issue an award granting Plaintiffs compensatory damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs.

## NATURE OF THE ACTION

1.      As detailed below, JPay, Inc. ("JPay") and Keefe Commissary Network, LLC ("Keefe") engaged in a scheme to intentionally deprive Plaintiffs and the members of the putative class, who are all inmates incarcerated by the Florida Department of Corrections ("FLDOC"), of digital music and/or audio books.

## PARTIES

2.      Plaintiff, Matthew Rodriguez ("Rodriguez"), is an inmate confined within the FLDOC, presently housed at: 1150 S.W. Allapatah Road, Indiantown, Florida 34956.

3.     Plaintiff, Otis Clayton ("Clayton"), is an inmate confined within the FLDOC, presently housed at: 1599 S.W. 187th Ave., Miami, Florida 33194.

4.     Defendant, JPay is a wholly owned subsidiary of Securus Technologies, Inc., is incorporated in Delaware and located at 12864 Biscayne Boulevard, Suite 243, Miami, Florida 33181. JPay touts itself as "the most trusted name in corrections" and offers myriad services to the correctional industry in over 30 states.

5.     Defendant, Keefe Commissary Network, LLC, is a Missouri corporation that does business under various trade names, including Access Corrections; Keefe is located at 10880 Linpage Place, St. Louis, Missouri 63132.  Keefe is the nation's largest operator of commissary stores inside correctional facilities and offers a wide array of services to correctional institutions, including the sales of MP3 players and music.

## JURISDICTION AND VENUE

6.     This Court has general diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity between Plaintiffs and Defendants.  This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of at least one Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

7.     Venue is proper in the United States District Court in and for the Southern District of Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

### The Keefe Digital Music Player Program

8.      In 2011 the FLDOC started the Digital Music Player Program within select facilities which was to provide a secure method by which FLDOC inmates could browse, select, purchase and download digital content to specialized digital media (MP3/MP4) players made explicitly for use by inmates in a correctional setting.  As part of that program, the FLDOC entered into contract with Keefe to provide these services through controlled kiosks as part of their expansive commissary services.  A copy of the 2011 Keefe Contract is attached hereto as Exhibit "A."

9.      The contract that Keefe and the FLDOC entered into set out all the requirements and conditions that the FLDOC mandated the Digital Music Player Program provide including an agreement that Keefe is/was responsible for processing all refunds for un-used prepaid media accounts, and that Keefe shall provide a backup method for inmate purchased media files in the event of loss/destruction/theft of the player to allow the inmate to be able to "restore" purchases onto a replacement media player.  Said music files were to be replaced at no cost to the inmate.

10.      In 2014, the FLDOC decided to expand the program, and attempted to secure a single contractor for the provision and operation of its Digital Music Player Program statewide. As such, the FLDOC invited proposals from qualified vendors that had experience in the provision of large-scale MP3 player program services in correctional or other security and law enforcement settings.

11.      As part of this bidding process, both the FLDOC's Invitation to Negotiate Contractual Services, as well as the FLDOC's Request for Proposal for Contractual Services, explicitly stated that compatibility with the FLDOC's vendor, in this case Keefe, was a mandatory

requirement of the contract, to ensure that inmates would not bear the cost of the transition between

vendors:

> *[T]he proposed system must allow for inmates who currently have a device and/or songs purchased from the current Contractor to transfer and/or obtain updated equipment and/or music compatible with the successful contractor's Digital Music Player Program*. It is the intent of the Department that the implementation of a new Digital Player Program to have little or no financial impact on inmates presently participating in the Department's current program. (emphasis added)

A copy of the Digital Music Player Program Solicitation is attached hereto as Exhibit "B."

12.     Ultimately, Keefe was awarded the exclusive contract for the Digital Music

Program pursuant to the above guidelines.  A copy of the Keefe Digital Music Player Program

Contract is attached hereto as Exhibit "C."

13.     From at least 2011 through 2017 FLDOC contracted with Keefe to provide the

Digital Music Player Program to inmates at facilities throughout the State of Florida.[1]

14.     Under the Digital Music Player Program, FLDOC inmates had the ability to

purchase one of two specially designed digital media players, for either $99.95 (4GB) or $119.95

(8GB), as well as various accessories for the players, including ear buds ($16.00), armbands

($15.00), and screen protectors ($6.00).

15.     Under the Digital Music Player Program, FLDOC inmates also had the ability to

purchase digital media files – including music and audiobooks – for use with the specially designed

media player, using funds from their inmate accounts. In order to purchase digital media files—

available to FLDOC inmates at a cost of $1.70 per file or song—FLDOC inmates were required

---

[1] In response to complaints from inmates as a result of its contract with JPay, as explained in detail below, the FLDOC negotiated and extended part of its contract with Keefe under the Digital Music Player Program through FLDOC January 23, 2019.

to purchase blocks of "Prepaid Media Credits," which required FLDOC inmates to purchase a minimum of five files or songs at a cost of $8.50.  Although, FLDOC policies restricted how much an inmate could spend on commissary items, there was no restriction on how many Prepaid Media Credits an inmate could purchase.

16.     FLDOC inmates purchased these blocks of credits using a Florida Department of Corrections MP4 Order Form, which was available at each FLDOC institution. These forms were then picked up and processed by Keefe representatives, on a bi-monthly basis, acting on behalf of, and at the direction of, the FLDOC.

17.     FLDOC inmates could then use these prepaid credits by securely connecting their digital media player to a kiosk, owned and maintained by Keefe, at their FLDOC institution, allowing them access to the MP3/MP4 Player Music Library and download available files or songs to a cloud-based library, or "reorder-manager," reserved for their use.

18.     FLDOC inmates also used the kiosks to transfer their downloaded digital media files from their cloud-based library to their specific digital media player device. While FLDOC inmates could only transfer the number of digital media files that would fit within the memory capacity of his or her digital media player, there was no limit on the number of credits, files, or songs that an FLDOC inmate could purchase, own, or maintain in their cloud-based library.

19.     In order to utilize the digital media player, FLDOC inmates were also required to connect their players to one of the Keefe kiosks at their FLDOC institution at regular intervals, to extend the device's Security Timer. If an FLDOC inmate failed to, or was unable to, connect his or her digital media player to a kiosk every thirty (30) days, the digital media player would be automatically disabled to prevent fraudulent use of the device as well as its use outside of the FLDOC's facilities.

20.     When purchasing a music or audio book file, FLDOC inmates, including the Plaintiffs, were provided a Keefe End User License Agreement ("End User Agreement").  As part of the End User Agreement, Keefe specifically promised the Plaintiffs and all putative class members that the downloads were permanent and the property of the inmate purchasing. In addition, the End User Agreement specifically stated:

> You shall be entitled to export, burn, or copy permanent downloads solely for your personal, noncommercial, and entertainment use and not for any redistribution.

The promise and representation that an inmate would be entitled to transfer their permanent downloads to other personal devices was conveyed to Plaintiffs and all FLDOC inmates that are part of the putative class.  A copy of the End User Agreement is attached hereto as Exhibit "D."

21.     To encourage inmates to purchase digital media players, digital media files, and accessories, the FLDOC published numerous advertisements that were posted in various FLDOC institutions and provided to inmates. These advertisements, including at least one widely-distributed advertisement, which appeared on the digital media player order form itself, touted various qualities of the Digital Music Player Program, including the following representation:

> Select from a music catalog of over 5 million songs from all music genres…Unlimited music! Whether you own a 4GB or *GB MAXX, there is no limit to the songs you can own! Simply remove the songs from the player to add more songs. Use the re-download feature to add previously removed music, *free of charge!* With MAXX, *once you purchase the music you always own it!* (emphasis added).

 A copy of the Keefe Advertisement is attached hereto as Exhibit "E."

22.     Upon information and belief, this representation was made by the FLDOC to Plaintiffs, and the inmates who are members of the putative class, to induce them into purchasing digital media files with the assistance and full knowledge of Keefe.

23.     This advertisement also included information about restrictions that the FLDOC

placed on the purchase or use of digital media players and/or files purchased through the Digital Music Player Program, pursuant to its internal rules and regulations. Notably, the same advertisement that promised Plaintiffs and the FLDOC inmates who are members of the putative class that they would "always own" the digital media files they had purchased listed only one restriction – that each FLDOC prisoner was only permitted to possess one digital media player at any given time.  Notwithstanding the fact that one of the requirements of the media player was that it had to be able to have AM/FM radio functions and inmates could purchase and own a separate AM/FM radio according to FLDOC policy. [2]

24.     Additionally, the FLDOC and Keefe repeatedly represented to inmates that  they were permitted to delete and re-order digital media files that they had purchased from the cloud-based library, at any time and at no additional cost. In explaining this system, the user guide that accompanied many of the digital media players, provided by Keefe, emphasized this re-ordering capability, and explicitly stated that inmates would never have to purchase the same song or book twice:

> You can delete and Re-Order songs as often as you want. You will never be charged for a song that is ordered from the Re-Order Manager. After all, you have already paid for the song once; *we don't think you should ever have to pay for it again*. (emphasis added)

A copy of the relevant pages of the Keefe User Guide is attached hereto as Exhibit "F."

25.     Moreover, as part of the July 19, 2011 MP3/MP4 digital media contract Keefe entered into with FLDOC for the benefit of the Plaintiffs and all inmates who are part of the

---

[2] Pursuant to the FLDOC's rules and regulations, at all relevant times, FLDOC inmates were not permitted to purchase, obtain, or otherwise own any digital media player other than the one offered by, and purchased through, the Digital Music Player Program, nor were FLDOC inmates permitted to purchase, obtain, or otherwise own any digital media files other than those offered by, and purchased through, the Digital Music Player Program.

putative class, Keefe expressly agreed:

> The Contractor [Keefe] shall provide a backup method for purchased media files in the event of loss/destruction/theft of player to enable the inmate to "restore" his purchase on a replacement player. The music files shall be restored to the replacement player at no cost to the inmate.

26.     Upon information and belief, none of the materials provided to FLDOC inmates regarding the operation of the Digital Music Player Program suggested, or informed participating FLDOC inmates, that their digital media file purchases would only be available for use during the span of the FLDOC's contract with Keefe; including, but not limited to, notices, advertisements, order forms, and/or user guides.   Nor did Keefe ever disclose to FLDOC inmates that their permanent downloads were contingent on the continuation of its contract with FLDOC.

27.     Similarly, upon information and belief, none of the FLDOC's internal rules or regulations never suggested or informed participating FLDOC inmates that their digital media file purchases would only be available for use during the span of the FLDOC's contract with Keefe.

28.     In or about April 2017 Keefe became aware that the FLDOC was not going to renew the Digital Music Player Program and was in fact going to enter into a new agreement for services with its competitor Defendant JPay.  Despite the FLDOC's decision to not renew the Digital Music Player Program, in or about September 2017, Keefe began offering the EDGE-Mini Tablet to the inmates.  The EDGE-Mini Tablet had capabilities that were similar to the smaller JPay 5 Mini 4.3-inch tablet.[3]   The sales of the EDGE-Mini Tablet lasted mere months and were ultimately stopped.[4]   All players were confiscated by the FLDOC claiming they did not approve of the fact

---

[3] Keefe offered and sold the EDGE-Mini Tablet to FLDOC inmates with the full clearance and approval of the FLDOC.

[4] FLDOC inmates were refunded the purchase price of the EDGE-Mini Tablet.

that the tablet contained a removable SD drive.[5]  In November 2017 the FLDOC finally informed the inmates that the Digital Music Player Program was going to end and that the FLDOC was beginning the JPay Multimedia Tablet Program.

29.     From 2011 to 2017, FLDOC inmates purchased approximately 6.7 million digital media files through the Digital Music Player Program, at a cost of roughly $11.3 million to those inmates and their families, while the FLDOC itself realized approximately $1.4 million in commissions on these sales during the same time period.  The remaining approximately $10 million in profit went to Keefe.  Furthermore, during this period FLDOC inmates collectively purchased over 30,000 media players supplied by Keefe, more than an additional $3.2 million realized by Keefe.

### JPay's Multimedia Tablet Program

30.     In April of 2017, the FLDOC entered into a new contract with a competing vendor, Defendant JPay, an agreement that allows the FLDOC and specifically JPay to realize even higher profit margins at the expense of Plaintiffs and the inmates that are part of the putative class.

31.     Under the current Multimedia Tablet Program, JPay offers two multimedia tablets for sale to FLDOC inmates, for either $79.99 or $129.99, depending on the screen size of the tablet.  Similar to the previous program, the Multimedia Tablet Program also allows inmates to purchase and download digital media content for use on their JPay Tablets.

32.     However, the Multimedia Tablet Program came with a significant downside for all inmates who had participated in the previous program: they would be required to surrender their digital media players to the FLDOC and lose access to all of their digital music and books,

---

[5] Discovery in this action will reveal the true motivations and circumstances as to why the EDGE-Mini Tablet sales were terminated.

regardless of whether they chose to participate in the Multimedia Tablet Program or not.

33. As part of the April 17, 2017 contract JPay entered into with the FLDOC laying out the terms of the Multimedia Tablet Program, JPay and the FLDOC expressly agreed:

> The Department [FLDOC] will address the following, which shall be communicated to the Contractor [JPay]:
> a. Current provider's warranty commitment;
> b. How inmates will redeem unused music credits;
> c. How inmates will retain previously-purchased music;
> d. Exact date for the current vendor to cease sales of players and songs;
> e. Current provider's player mortality; and
> f. How the current program will close out, including disposition of current players.

In addition, JPay expressly agreed in the contract to "prepare a Frequently Asked Questions (FAQ) document for the Department to distribute to inmates and staff that details these key topics and any others that need further explanation." A copy of the Multimedia Tablet Program Contract is attached hereto as Exhibit "G."

34. JPay worked hand in glove with the FLDOC to mislead the Plaintiffs and the other FLDOC inmates that are part of the putative class, and conspired with FLDOC to deprive them of their lawfully purchased property, without just compensation; despite express promises that Plaintiffs and other FLDOC inmates were entitled to transfer their digital media and would not have to repurchase digital media they already purchased.

**The Pilot Program**

35. In April 2017 JPay and the FLDOC decided to enact a pilot program for the Multimedia Tablet Program at Wakulla Correctional Institution located in Crawfordville, Florida.

36. As part of the pilot program, JPay transferred all digital media files from the Wakulla C.I. inmates' Keefe MP3/MP4 Players, and cloud-based library onto their JPay Tablets.

37. Realizing JPay could not make enough money by allowing FLDOC inmates to be able to transfer their digital media from the Digital Music Player Program, JPay and the FLDOC

conspired to devise a scheme that would deny the FLDOC inmates access to their digital media that was previously purchased.   It was decided that the FLDOC and JPay would deceive FLDOC inmates by informing them that their digital media would not be able to be transferred to the new Multimedia Tablet Program, and that the Keefe MP3/MP4 Players would become contraband.

### The Scheme to Defraud and Deprive the Class of Their Lawful Property

38.     JPay worked in concert with the FLDOC to unlawfully deprive Plaintiffs and other putative class members of their property, by ensuring that they would have to surrender and dispose of their digital music players, and by eliminating their access to any digital media that was stored in their cloud-based library, on the Keefe Kiosks.

39.     To that end, JPay with intent, and reckless disregard for Plaintiffs' and the members of the putative class's rights knowingly deprived them of their property for JPay's pecuniary gain. JPay expressly drafted the FAQs which were sent to all inmates and their families representing that previously downloaded digital media would not be transferred to a new JPay Tablet.

40.     Moreover, as part of the its contract with the FLDOC, JPay specifically received a list of all FLDOC inmates who purchased players and music through the Digital Music Player Program.   JPay was directly aware that the FLDOC was actively denying inmates access to their legally purchased "permanent" downloads, and upon information and belief, assisted with the misleading messaging that was provided to the inmates in response to their filed grievances.[6]   A

---

[6] In order to implement the Multimedia Tablet Program, the FLDOC first cut off access to those inmates' cloud-based libraries in January 2018, preventing them from downloading their own previously purchased digital media content.

Pursuant to the Multimedia Tablet Program, the FLDOC has forced, and is forcing, all FLDOC inmates who had participated in the previous Digital Media Player Program to surrender their lawfully purchased digital media players—including all of the digital media files on the player—to the FLDOC, on the date that they receive a new JPay Tablet under the Multimedia Tablet Program. For those inmates who chose not to receive a new JPay Tablet, the FLDOC set a deadline of January 23, 2019 to surrender their digital media player.

copy of Notice of Development of Rulemaking Rule 33-602.201 is attached hereto as Exhibit "H."

41.     Pursuant to the Multimedia Tablet Policy, on the date that the FLDOC forces a inmate to surrender their digital media player and files, that inmate is given the option to mail their digital media player to Keefe to have the Mortlaity Timer removed and mailed to someone outside of the correctional institution (for a fee of $24.95), or have the digital media files that were stored on the Keefe MP3/MP4 Player transferred to a CD and then mailed to someone outside of prison (for the same fee).[7]

42.     The option to send the player and/or files to someone outside of the correctional institution does not cure the problem. As noted above, FLDOC inmates purchased the Keefe MP3/MP4 Players and the digital media to listen to and enjoy *while in incarcerated*—not at some unspecified time in the future.  Further, many FLDOC inmates are serving life sentences (or a term so long it is the functional equivalent of life) or have no family or friends to send their property to. For these inmates in particular, the option to mail out their property is completely illusory solution.

43.     Moreover, upon information and belief, for digital media files that were stored in inmates' cloud-based library, is no longer retrievable; these files are simply gone forever.

44.     Despite previous assurances from the FLDOC and Keefe that inmates would "always own" the digital media files they had purchased under the previous program, the FLDOC with JPay's direct knowledge and assistance, did not permit inmates to transfer *any* of the digital media files that they had purchased under the previous program to the new JPay Tablets, regardless of whether such digital media files were contained on the inmates Keefe MP3/MP Player itself or in the inmates' cloud-based library.

---

[7] It is unclear whether any inmates have been able to utilize either of these options, however, and whether the FDOC and/or Keefe have complied with any such requests.

45.     If inmates want to listen to the digital media they had purchased under the previous program, they are required to re-purchase them under the current Multimedia Tablet Program. This was done according to the FLDOC so that JPay "could be compensated for their services."

46.     Inmates were forced to surrender their Keefe MP3/MP4 Players, and lost access to their digital media files as described above, regardless of whether they chose to additionally purchase a JPay Tablet through the Multimedia Tablet Program, the length of their sentence, or whether they have identifiable family members to whom to send their property.

47.     Since the implementation of the Multimedia Tablet Program, FLDOC inmates have written hundreds of grievances and administrative appeals complaining about the arbitrary confiscation of their property without compensation. The FLDOC, through its Bureau of Contract Management, has denied all such grievances and appeals.

48.     In response to the outpouring of grievances and appeals, the FLDOC developed standard response language. That language acknowledges  the significant investment that FLDOC inmates and their families have made in the Digital Music Player Program, stating, among other things, "we understand that some inmates have made a significant investment in music with their current digital music players," and "we are aware that family members over the years have provided funds for their loved one to add music to their current MP3 player."

49.     Despite these acknowledgements, the FLDOC has denied all such grievances and appeals and continues to move forward with the Multimedia Tablet Program without modification.

50.     Moreover, the FLDOC has even explicitly admitted that the confiscation of lawfully purchased property without compensation was done to allow JPay to realize additional profits, stating in several grievance responses that the confiscation of all FLDOC inmates' digital media files is "necessary" because "the download of content purchased from one vendor to another

vendor's device would negate the new vendor's ability to be compensated for their services."  A copy of the FLDOC answer to Plaintiff's grievance is attached hereto as Exhibit "I."

51.     In addition, the FLDOC's standard grievance response language simply tells inmates that their loss of property will be good for them in the long run, stating, "It is unfortunate that the music cannot be transferred, however, we hope that overtime [sic] the family and the inmate will see the added value of the new program."  All of this was done for the benefit of JPay with their knowledge as expressly agreed to in the contract they entered into for the Multimedia Tablet Program.

## CLASS ALLEGATIONS

52.     Plaintiffs bring this action as a class action, pursuant to Rule 23(a) and 23(b)(3), Federal Rules of Civil Procedure on behalf of themselves and a class of all persons similarly situated.

53.     Plaintiffs bring this class action pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and are member of, and seeks to represent, a class of persons and entities defined as:

> "All FLDOC inmates who purchased Keefe MP3/MP4 Players, accessories, and
> digital media files through the Digital Music Player Program and whose Keefe
> MP3/MP4 Players and digital media files were taken, or will be taken, pursuant
> to the Multimedia Tablet Program."

54.     Excluded from the putative class are the Defendants, Defendants' directors and officers, immediate families of Defendants' directors and officers, and any entity in which the Defendants maintained a controlling interest, or that is related to or affiliated with the Defendants,

or the legal representatives, agents, affiliates, heirs, successors-in-interests or assignees of any such excluded person.  Also expressly excluded from the class are any persons and entities who have filed claims against any of the Defendants which are currently pending.

55.     **Numerosity (Fed. R. Civ. P. 23(a)(1))** - The members of the putative class are so numerous that joinder of all members is impracticable. Plaintiffs estimate that the number of putative class members to be tens of thousands or more.

56.     The precise number of putative class members can easily be ascertained by the records of both Defendant Keefe and Defendant JPay.

57.     Notice may be provided to class members using first-class mail and other means.

58.     **Commonality (Fed. R. Civ. P. 23(a)(2)) -** Common questions of law and fact exist as to all putative class members and predominate over questions affecting individual putative class members.  Among the questions of law and fact common to the putative class are:

   a.   the scope and nature of Defendant Keefe's Digital Music Player Program;

   b.   the scope and nature of Defendant JPay's Multimedia Tablet Program;

   c.   whether Defendant JPay offered just compensation to inmates whose property was confiscated pursuant to the Multimedia Tablet Program;

   d.   whether Defendant Keefe offered just compensation to inmates whose property was confiscated pursuant to the Multimedia Tablet Program;

   e.   whether Defendant Keefe stands liable of fraudulent inducement for the misstatements and omissions they conveyed to Plaintiffs and the putative class;

   f.   whether Defendant Keefe is liable to Plaintiffs and the putative class for breach of contract;

   g.   whether Defendant Keefe defrauded Plaintiffs and the putative class through its

misstatements and omissions conveyed to them;

h.   whether Defendant Keefe is liable to Plaintiffs and the putative class for conversion;

i.   whether Defendant Keefe aided and abetted the fraud committed against the Plaintiffs and the putative class in light of its knowledge of the FLDOC's misrepresentations and omissions made to the Plaintiffs and the putative class concerning the Digital Media Player Program;

j.   whether Defendants Keefe and JPay conspired with the FLDOC to defraud Plaintiffs and the putative class;

k.   whether Defendant JPay stands liable of fraudulent inducement for the misstatements and omissions they conveyed to Plaintiffs and the putative class;

l.   whether Defendant JPay aided and abetted the fraud committed against the Plaintiffs and the putative class in light of its knowledge of the FLDOC's misrepresentations and omissions made to the Plaintiffs and the putative class concerning the Digital Media Player Program and the Multimedia Tablet Program;

m.   whether Defendant Keefee's conduct constitutes a violation of Florida's Unfair Deceptive Trade Practices Act;

n.   whether Defendant JPay's conduct constitutes a violation of Florida's Unfair Deceptive Trade Practices Act;

o.   whether Defendant Keefe is liable to the Plaintiffs and the putative class for unjust enrichment;

p.   whether, and to what extent Plaintiffs and the putative class were damaged by Defendant Keefe's conduct;

q.   whether, and to what extent Plaintiffs and the putative class were damaged by

Defendant JPay's conduct; and

r.  whether Plaintiffs and the putative class have sustained monetary loss and the proper measure of that loss.

59.  **Typicality (Fed. R. Civ. P. 23(a)(3))** - Plaintiffs' claims are typical of the claims of all the putative class members.   Plaintiffs have been damaged by the same wrongful conduct by Defendants Keefe and JPay and suffered injuries similar in kind and degree to the injuries suffered by all putative class members. Plaintiffs make the same claims and seek the same relief for themselves and for all putative class members.

60.  **Adequate Representation (Fed. R. Civ. P. 23(a)(4))** -  Plaintiffs will fairly and adequately protect the interests of the putative class.  Plaintiffs have retained counsel that are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the putative class.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the putative class.

61.  **Superiority (Fed.  R.  Civ.  P.  23(b)(3))** - Proceeding on a classwide basis is a superior method for the fair and efficient adjudication of the controversy because class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expenses that individual actions would entail.  Class treatment will allow injured persons to seek redress for injuries that would not be practical to pursue individually because the damages suffered by the individual members of the putative class is relatively small compared to the burden and expense of individual litigation of their claims against Defendants Keefe and JPay.  These benefits substantially outweigh any difficulties that could arise out of class treatment.  Furthermore, Plaintiffs know of no difficulty that will arise in the management of this litigation that would

preclude its maintenance as a class action.

## COUNT ONE:
## FRAUDULENT INDUCEMENT
## (AS TO KEEFE)

62.    Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

63.    As more specifically set forth above, Defendant Keefe and the FLDOC falsely and fraudulently represented to Plaintiffs and members of the putative class, that they would always own the digital media files purchased under the Digital Music Player Program.

64.    The End User Agreement falsely and fraudulently represented to the Plaintiffs and members of the putative class, that FLDOC inmates would always be entitled to transfer their permanent downloads to other personal devices.

65.    Additionally, Defendant Keefe falsely and fraudulently represented purchases entitled the FLDOC inmates to export, burn, or copy their permanent downloads for their personal and entertainment use; that they would always be permitted to delete and re-order digital media files that they had purchased from the cloud-based library, at any time and at no additional cost; and that all digital downloads were permanent.

66.    The representations made by Defendant Keefe and FLDOC were in fact false as the Digital Music Player Program contract contained an expiration date.

67.    When Defendant Keefe made these representations, they knew them to be false.

68.    The false representations made by Keefe and FLDOC were made with the intent to defraud and deceive Plaintiffs and members of the putative class, specifically in order to compel them to purchase MP3/MP4 Players, accessories and digital media files.

69.     Plaintiffs and the inmates who are members of the putative class relied upon the false and fraudulent representations made by Defendant Keefe and FLDOC when purchasing in excess of $11,000,00.00 of Keefe MP3/MP4 Players, accessories and digital media files under the Digital Music Download Program.

70.     As a result, Plaintiffs and the inmates who are part of the putative class have suffered substantial monetary damages and loss of their property rights.

## COUNT TWO:
## BREACH OF CONTRACT
## (AS TO KEEFE)

71.     Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

72.     As a condition of participation in the Digital Music Player Program Plaintiffs received and were required to accept the End User Agreement.

73.     The End User Agreement set forth express promises, including the permanent nature of Plaintiffs digital media purchases.

74.     Plaintiffs complied with each of their obligations under the End User Agreement.

75.     In December 2017, Keefe removed the Keefe Kiosks from FLDOC institutions which has permanently blocked inmates from accessing their digital media files stored in the cloud-based library.

76.     As more specifically set forth above, Defendant Keefe has breached, and is in continuing breach of, their contractual obligations and promises made to Plaintiffs under the End User Agreement.

77.     The actions and inactions of Keefe have caused Plaintiffs to suffer substantial damages.

## COUNT THREE:
## COMMON LAW FRAUD
## (AS TO KEEFE)

78.     Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

79.     From 2011 to 2017, Defendant Keefe and FLDOC falsely and fraudulently represented to Plaintiffs and members of the putative class, that they would always own the digital media files purchased under the Digital Music Player Program.

80.     As more specifically set forth above, Defendant Keefe and FLDOC falsely and fraudulently represented: (1) digital downloads were permanent; (2) the FLDOC inmate was entitled to export, burn, or copy permanent downloads solely for their personal, noncommercial, and entertainment use; (3) FLDOC inmates would always be entitled to transfer their permanent downloads to other personal devices; and (4) that they would always be permitted to delete and re-order digital media files that they had purchased from the cloud-based library, at any time and at no additional cost.

81.     Additionally, Keefe's User Guide that accompanied Keefe MP3/MP4 Players, falsely and fraudulently represented to FLDOC inmates that they would never have to purchase the same song or book twice and that they could delete and re-order songs as often they wanted.

82.     Notwithstanding Keefe's express promises that the digital media downloads were permanent and the property of the inmate, Keefe began removing Kiosks from FLDOC institutions in December 2017.

83.     The representations made by Defendant Keefe were in fact false as Keefe knew the Digital Music Player Program contract had an expiration date.

84.     Plaintiffs and the inmates who are members of the putative class, believed the representations of Keefe and FLDOC to be true, and relied upon those false and fraudulent representations to their detriment when they: (1) purchased more than 30,000 Keefe MP3/MP4 Players and (2) purchased more than $11,000,000.00 in digital content.

85.     As a proximate result of the fraud and deceit of Defendant Keefe, Plaintiffs and the inmates who are part of the putative class have suffered substantial monetary damages and loss of their property rights.

### COUNT FOUR:
### CONVERSION
### (AS TO KEEFE)

86.     Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

87.     As more specifically set forth above, Plaintiffs and the inmates who are part of the putative class purchased permanent digital media files from Keefe through the Digital Music Player Program.

88.     Plaintiffs and the members of the putative class own millions of dollars in digital media files stored in the cloud-based library on the Keefe Kiosks.

89.     Defendant Keefe removed their Kiosks from FLDOC facilities thereby permanently dispossessing Plaintiffs of their digital media property housed in the cloud-based library.

90.     At the time the Keefe Kiosks were removed Plaintiffs enjoyed a right to the possession of their digital media property stored on the cloud-based library.

91.     Notwithstanding, the illusory option to mail their Keefe MP3/MP4 Players, accessories and/or digital media property outside of the correctional institution, Defendant Keefe

wrongfully asserted dominion and control over Plaintiffs' digital media property stored in the cloud-based library without Plaintiffs' permission and/or consent.

92.     Keefe has permanently deprived Plaintiffs of their rights to their digital media property.

93.     The wrongful actions of Keefe were intentional acts performed without any justification or privilege.

94.     As a proximate result of the act of dominion wrongfully asserted by Keefe over Plaintiffs' property, Plaintiffs have suffered substantial damages and loss of their property rights.

**COUNT FIVE:**
**AIDING AND ABETTING FRAUD**
**(AS TO KEEFE)**

95.     Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

96.     As more specifically set forth above, Defendant Keefe and FLDOC falsely and fraudulently represented to Plaintiffs and members of the putative class, that they would always own the digital media files purchased under the Digital Music Download Program.

97.     At the time Defendant Keefe and FLDOC made such misrepresentations, FLDOC inmates were not informed that their digital media file purchases would only be available for use during the span of the FLDOC's contract with Keefe.

98.     Defendant Keefe substantially assisted FLDOC in creating and executing this scheme with the intent to defraud and deceive Plaintiffs and members of the putative class.

99.     When Defendant Keefe and FLDOC made these false representations, they knew them to be false.

100.     When Defendant Keefe made false and fraudulent representations, they substantially assisted FLDOC in defrauding the Plaintiffs and wrongfully depriving them of their lawfully obtained property.

101.     The false and fraudulent representations were made by Keefe and FLDOC to Plaintiffs in order to induce them into purchasing Keefe MP3/MP4 Players, accessories, digital media files and the EDGE-Mini Tablet.

102.     Plaintiffs relied upon the misrepresentations made by Defendant Keefe and FLDOC, to their detriment, when purchasing Keefe MP3/MP4 Players, accessories, digital content and the EDGE-Mini Tablet.

103.     Notwithstanding Keefe's express promises that the digital media downloads were permanent and the property of the inmate purchasing, neither Keefe nor FLDOC have refunded Plaintiffs for their wrongfully taken property.

104.     As a proximate result, Plaintiffs and the inmates who are part of the putative class have suffered substantial monetary damages and loss of their property rights.

## COUNT SIX:
## CIVIL CONSPIRACY
## (AS TO KEEFE AND JPAY)

105.     Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

106.     Defendants Keefe and Defendant JPay engaged in a conspiracy to defraud the Plaintiffs and deprive them of their lawfully purchased digital media and Keefe MP3/MP4 Players.

107.     Upon information and belief, the time period for the conspiracy was approximately April 2017 through the present.

108.    Among the primary objectives of the conspiracy was a wrongful taking of some or all of the Plaintiffs' Keefe MP3/MP4 Players, accessories, and digital media property purchased by them through the Digital Music Player Program.

109.    In pursuit of this conspiracy, one or more Defendants executed contracts with FLDOC to assist in the taking of some or all of the Keefe MP3/MP4 Players, accessories, and digital media property, with knowledge of Plaintiffs' property rights.

110.    Defendants acted in bad faith so that each may keep the spoils of their scheme.

111.    Defendants acted with actual knowledge of, or reckless indifference to, the fact that Plaintiffs would be wrongfully dispossessed of their lawfully owned property.

112.    Defendants' actions performed pursuant to the conspiracy have proximately caused Plaintiffs to suffer substantial damages and loss of their property rights.

**COUNT SEVEN:**
**FRAUDULENT INDUCEMENT**
**(AS TO JPAY)**

113.    Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

114.    As stated above, in April 2017, the FLDOC executed the Multimedia Tablet Program with Defendant JPay.

115.    As more specifically set forth above, Defendant JPay and FLDOC falsely and fraudulently represented to Plaintiffs that none of the media purchased under the Digital Music Player Program was transferrable to JPay Tablets.

116.    The representations made by Defendant JPay and FLDOC were in fact false as, upon information and belief, a pilot program was conducted at Wakulla Correctional Institution

wherein digital media files purchased under Digital Music Player Program were transferred onto JPay Tablets.

117.    Additionally, Defendant JPay assisted FLDOC with the misleading messaging that was provided to the Plaintiffs in response to their filed grievances.

118.    When Defendant JPay and FLDOC made these false and fraudulent representations, they knew them to be false.

119.    Defendant JPay and FLDOC made these false representations with the intent to defraud and deceive Plaintiffs and in order to compel Plaintiffs to repurchase equipment, accessories and digital content from Defendant JPay.

120.    Plaintiffs believed the representations of JPay and FLDOC to be true and relied upon those representations to their detriment, when they were compelled to forfeit their digital media content and Keefe MP3/MP4 Players purchased under the Digital Music Player Program.

121.    As a proximate result of the fraud and deceit of Defendant JPay and FLDOC Plaintiffs have suffered substantial damages and loss of their property rights.

## COUNT EIGHT:
## COMMON LAW FRAUD
## (AS TO JPAY)

122.    Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

123.    As stated above, in April 2017, the FLDOC executed the Multimedia Tablet Program with Defendant JPay.

124.    As more specifically set forth above, Defendant JPay and FLDOC falsely and fraudulently represented to Plaintiffs that none of the media purchased under the Digital Music Player Program was transferrable to JPay Tablets.

125.    The representations made by Defendant JPay and FLDOC were in fact false as, upon information and belief, in 2017 a pilot program was conducted at Wakulla Correctional Institution wherein digital media files purchased under Digital Music Player Program were successfully transferred onto JPay Tablets.

126.    Additionally, Defendant JPay assisted FLDOC with the misleading messaging that was provided to the Plaintiffs in response to their filed grievances concerning the loss of their property.

127.    When Defendant JPay and FLDOC made these false and fraudulent representations, they knew them to be false.

128.    Defendant JPay and FLDOC made these false representations with the intent to defraud and deceive Plaintiffs and in order to compel Plaintiffs to repurchase JPay Tablets, accessories and digital content.

129.    Plaintiffs believed the representations of JPay and FLDOC to be true and relied upon those representations to their detriment, when they were compelled to forfeit their Keefe MP3/MP4 Players and digital media content.

130.    As a proximate result of the fraud and deceit of Defendant JPay and FLDOC Plaintiffs have suffered substantial damages and loss of their property rights.

## COUNT TEN:
## AIDING AND ABEDTTING FRAUD
## (AS TO JPAY)

131.    Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

132.    As more specifically set forth above, Defendant Keefe and FLDOC falsely and fraudulently represented to Plaintiffs and inmates who are members of the putative class that once purchased the digital media content would be their property forever.

133.    Defendant JPay provided substantial assistance to FLDOC in authoring and circulating FAQs which contained false and fraudulent misrepresentations concerning the transferability of the Plaintiffs' digital media property from the Digital Music Player Program to the Multimedia Tablet Program.

134.    JPay also substantially assisted FLDOC's scheme to defraud and deceive Plaintiffs by providing monetary rewards exclusively to inmates that participated in their Multimedia Tablet Program in an effort to facilitate the FLDOC taking of the Plaintiffs lawfully owned Keefe MP3/MP4 Players and digital media content purchased under the Digital Music Player Program.

## COUNT ELEVEN:
### FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, *et seq*.)
### (AS TO KEEFE)

135.    Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

136.    For decades, Keefe has entered into numerous multimillion-dollar contracts with the state of Florida and FLDOC for the sales of goods and services to FLDOC inmates, and members of the class, including but not limited to the Digital Music Download Program.

137.    Throughout the Digital Music Download Program, Keefe and FLDOC, sold Plaintiffs and members of the putative class, in excess of $11,000,000.00 in Keefe MP3/MP4 Players, accessories and digital media content.

138.    As more specifically set forth above, Defendant Keefe and FLDOC falsely and fraudulently represented to Plaintiffs, and inmates who are members of the putative class, that once purchased the digital media content would be their property forever.

139.    Additionally, Defendant Keefe falsely and fraudulently represented to Plaintiffs that their digital media purchases would be transferrable to other personal devices.

140.    The representations made by Defendant Keefe and FLDOC were in fact false as the Digital Music Player Program contract contained an expiration date.

141.    Keefe and FLDOC's representations were also false and fraudulent as the digital media content is in fact transferrable to the JPay Tablets.

142.    When Defendant Keefe and FLDOC made these representations, they knew them to be false.

143.    Keefe and FLDOC's unconscionable and deceptive acts and practices were designed to maximize profits and inflict injury and harm only upon Plaintiffs and members of the putative class.

144.    Plaintiffs are injured by virtue of the Keefe deceptive and unfair trade practices as contemplated by FDUPTA.

145.    As a result of Keefe's violations of FDUPTA, Plaintiffs have suffered, and continue to suffer, substantial damages.

**<u>COUNT TWELVE:</u>**
**FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**(Fla. Stat. § 501.201, *et seq*.)**
**(AS TO JPAY)**

146.    Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

147.    On April 17, 2017, Defendant JPay executed the Multimedia Tablet Program with the state of Florida and FLDOC for the sales of goods and services to FLDOC inmates, and members of the putative class.

148.    Defendant JPay authored and circulated FAQs to the consumers, including Plaintiffs, which contained false and fraudulent misrepresentations concerning the transferability of their digital media property from the Digital Music Player Program to the Multimedia Tablet Program.

149.    JPay and FLDOC's representations were also false and fraudulent as the digital media content is in fact transferrable to the JPay Tablets.

150.    When Defendant JPay and FLDOC made these representations, they knew them to be false.

151.    JPay and FLDOC's unconscionable and deceptive acts and practices were designed to maximize profits and inflict injury and harm only upon Plaintiffs and members of the putative class.

152.    Plaintiffs are injured by virtue of the JPay's deceptive and unfair trade practices as contemplated by FDUPTA.

153.    As a proximate result of JPAY's violations of FDUPTA, Plaintiffs have suffered, and continue to suffer, substantial damages.

**COUNT THIRTEEN:**
**UNJUST ENRICHMENT**
**(AS TO KEEFE)**

154.    Plaintiffs repeat, reallege and adopt paragraphs 1 through 61 above as if fully set forth herein.

155.    In and between January 2011 and December 2017, Keefe sold, and Plaintiffs purchased more than 33,000 Keefe MP3/MP4 Players and Plaintiffs and members of the putative class conferred a benefit to Keefe for the music downloads excess of $11,000,000.00.

156.    Keefe voluntarily accepted and retained the benefit conferred by Plaintiffs, and members of the putative class.

157.    In December 2017, Keefe began removing the Keefe Kiosks from FLDOC institutions and Plaintiffs no longer have access to their purchased digital media content housed in the cloud-based storage.

158.    The circumstances render Keefe's retention of monies paid by Plaintiffs and members of the putative class inequitable unless Keefe refunds Plaintiffs the value of the Players, accessories and digital media downloads.

159.    Keefe has been unjustly enriched at the expense of the Plaintiffs.

160.    Plaintiffs and members of the putative class are entitled to damages as a result of Keefe's unjust enrichment.

161.    Keefe is liable to give restitution to Plaintiffs and members of the putative class, for all benefits conferred under the Digital Music Player Program.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the inmates who are part of the putative class pray for the following relief:

(a) Determining that this action is a proper class action, certifying Plaintiffs as Class Representatives under Rules 23 (b)(3) and Plaintiffs' counsel as Class Counsel;

(b) Awarding Plaintiffs and the putative class compensatory damages under 42 USC § 1983;

(c) Awarding Plaintiffs and the putative class compensatory damages for Keefe's fraudulent inducement and negligent omissions;

(d)  Awarding Plaintiffs and the putative class compensatory damages for JPay's fraud;

(e) For judgment against Keefe for the value of the benefits conferred upon Keefe by virtue of Plaintiffs' and putative class' purchasing Keefe MP3/MP4 Players, accessories and digital media downloads, according to proof at trial, which value is believed to exceed Eleven Million Dollars ($11,000,000.00);

(f)  Awarding Plaintiffs and the putative class prejudgment interest at the maximum legal rate; costs of this action; and reasonable attorneys';

(g) Awarding Plaintiffs punitive damages, as permitted by law, for Defendants' willful and wonton acts; and

(h) Granting other such relief as the Court deems just and proper.

Dated: April 24, 2019

Respectfully submitted,

By: /s/Scott D. Hirsch_____
Scott D. Hirsch, Esq.
Florida Bar No: 0050833
SCOTT HIRSCH LAW GROUP, PLLC
7301 W. Palmetto Park Road, Ste. 207A
Boca Raton, FL 33433
Tel.:    (561) 569 -7062
Fax:    (561) 278 - 6244
Scott.Hirsch@ScottHirschLawGroup.com

Joshua M. Entin, Esq.                          Erika D. Rodriguez, Esq.
Florida Bar No: 0493724                      Florida Bar. No.: 1004212
ENTIN LAW GROUP, P.A.                   RODRIGUEZ LAW & ADVOCACY, P.A.
633 S. Andrews, Ave Suite 500              7301 W. Palmetto Park Road, Ste. 207A
Ft. Lauderdale, Florida 33301                 Boca Raton, FL 33433
Tel:    (954) 761-7201                            Tel.:    (561) 800-4177
Fax:    (954) 764-2443                          Fax:    (561) 278 - 6244
Josh@entinlaw.com                            Erika@RodriguezLawPA.com