UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-14137-ROSENBERG/MAYNARD

MATTHEW RODRIGUEZ and
OTIS CLAYTON, individually and
on behalf of those similarly situated,

    Plaintiffs,

v.

JPAY, INC. and
KEEFE COMMISSARY NETWORK, LLC,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT JPAY, INC.'S PETITION TO COMPEL
BILATERAL ARBITRATION AND TO STAY ALL PROCEEDINGS**

Plaintiffs Matthew Rodriguez and Otis Clayton through their undersigned counsel, for the reasons stated herein, respectfully request that Defendant JPay, Inc's ("JPay") Petition to Compel Bilateral Arbitration and to Stay all Proceedings be denied.[1]

**I.  INTRODUCTION**

On April 25, 2019, Plaintiffs filed a class action complaint, on behalf of themselves and all similarly situated Florida Department of Corrections ("FLDOC") inmates seeking damages for the taking and loss of their digital media players and digital media, purchased as part of the Digital Music Player Program.

On June 20, 2019, JPay filed its Petition to Compel Bilateral Arbitration and to Stay all

---

[1] Contemporaneously with this filing, Plaintiffs are filing a Motion for Leave to Amend the Complaint which seeks, in part, to drop Otis Clayton as a party-Plaintiff. In the event the Court grants the Motion for Leave to Amend, then Plaintiffs would also request that Mr. Clayton be dropped from this Response in Opposition to the Motion to Compel Arbitration.

Proceedings [D.E. 25] (the "Motion").

In the Motion, JPay argues that arbitration is required pursuant to the purported Terms of Service and Warranty Policy [D.E. 25-2] (the "Agreement"). The Agreement, JPay relies on to compel arbitration, is notably undated and contains within it an arbitration clause that is unconscionable under Florida law, for the reasons stated below. Interestingly, not all FLDOC inmates have seen the Agreement which JPay relies on. One such inmate, who is currently incarcerated at Century Correctional Institution, has only seen a one-page terms document, that does not contain an arbitration agreement, when using the JPay Kiosk; nor has he ever seen one. *See* Reid Decl. ¶¶ 8, 9, 11, 12. This raises a question as to what uniformity of substance and content, if any, is being applied to these agreements JPay is attempting to bind Plaintiffs and the putative class to.

Additionally, the substance of Plaintiffs' claims falls outside the scope of the arbitration agreement. Moreover, the arbitration agreement itself is not retroactive. Therefore, even if it is determined the arbitration agreement is enforceable, the claims raised occurred prior to the entry of the Agreement.

## II. ARGUMENT

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, "embodies a liberal federal policy favoring arbitration agreements" and creates a presumption in favor of arbitrability where "doubts concerning the scope of arbitrable issues" are present. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (citations omitted). However, the presumption in favor of arbitration "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id*. (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014)). The presumption in favor of arbitrability does not apply when evaluating whether the parties entered

into such an agreement because determining if "an arbitration agreement exists at all is 'simply a matter of contract.'" *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "Accordingly, when determining whether an arbitration agreement exists, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). Thus, before applying the presumption in favor of arbitrability, courts must "look for evidence that the parties 'objectively revealed an intent to submit the dispute to arbitration.'" *Id.* (quoting *First Options*, 514 U.S. at 944).

Under both Florida law and the FAA, a court evaluating a motion to compel arbitration must consider: "(1) whether a valid arbitration agreement exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived." *Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Group, LLC*, 124 So. 3d 968, 971 (Fla. 3d DCA 2013) (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). In *Seifert v. U.S. Home Corp.*, the Florida Supreme Court held that "whether an arbitration clause requires arbitration of a particular dispute necessarily 'rests on the intent of the parties.'" 750 So. 2d at 636. Moreover, "[C]ourts may not require arbitration beyond the scope of the contractual agreement, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, (1960)). Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132-34 (11th Cir. 2010).

Consistent with this precedent, and for the reasons set forth fully below, this Court can and must find that the arbitration agreement that JPay seeks to enforce here is unenforceable as a matter of law.

A.   **The Arbitration Agreement is Unconscionable and Therefore Unenforceable**

To show a contract or a provision thereof is invalid for unconscionability, it must be both procedurally and substantively unconscionable. *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989). While both procedural and substantive unconscionability must be shown "they need not be present to the same degree." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014), *reh'g denied* (June 19, 2014). Florida has adopted a balancing approach to unconscionability in which one element may outweigh another and thereby show unconscionability, "provided that there is at least a modicum of the weaker prong." *Id*. The more substantively oppressive an arbitration clause is, the less procedurally oppressive it needs to be to sustain a finding of unconscionability, and vice versa. *Howse v. DirecTV, LLC*, 221 F.Supp.3d 1339, 1342 (M.D Fla. Oct. 31, 2016) (citing *Basulto*, 141 So. 3d at 1159)). "When analyzing unconscionability courts must bear in mind the bargaining power of the parties involved and the interplay between procedural and substantive unconscionability." *Basulto*, 141 So. 3d at 1160. "In the typical case of consumer adhesion contracts, where there is virtually no bargaining between the parties, the commercial enterprise or business responsible for drafting the contract is in a position to unilaterally create one-sided terms that are oppressive to the consumer, the party lacking bargaining power." *Id*. at 1160-1161.

i.   **The Arbitration Agreement is Procedurally Unconscionable**

"The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999). "To determine whether a contract is procedurally unconscionable, a court must . . . determine whether the complaining party had a 'meaningful choice' at the time the contract was entered." *Gainesville Health Care Ctr., Inc. v.*

*Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003).  Under Florida law, courts look at the following factors in determining if an agreement is procedurally unconscionable: "(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a 'take-it-or-leave-it' basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010).  "[T]he fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable because it suggests an absence of 'meaningful choice.'" *Gainesville Health Care Ctr., Inc.*, 857 So. 2d at 285 (internal citations omitted)).

Here, the arbitration agreement is the exemplification of an adhesion contract, one without meaningful choice or bargaining power; meeting all the elements espoused by the *Pendergast* Court.  Plaintiffs, who are inmates, were presented with the Agreement, which contained the offending arbitration clause, while they were incarcerated and without the freedom of choice. Plaintiffs were given essentially no choice but to accept to the arbitration clause.

As stated in Plaintiffs' Complaint, FLDOC terminated its contract with Defendant Keefe Commissary Network, LLC ("Keefe"), and entered into a new contract for services with JPay. Plaintiffs, and the other inmates were not given a choice in this matter.  Moreover, the Kiosks that housed many of the digital media files were removed and replaced with the JPay Kiosk.  To make matters worse, Plaintiffs' old digital media players were made contraband.  *See* Rodriguez Decl. at ¶25. To have any sort of electronic services and/or communication, or even to simply be notified that Plaintiffs have money in their commissary account to purchase essential goods and services,

Plaintiffs must use the JPay Kiosk.[2] *See* Rodriquez Decl. ¶¶19, 20, 24. This was a true absence of choice. *See Regan v. Stored Values Cards, Inc.*, 85 F. Supp. 3d 1357, 1364 (N.D. Ga. Jan. 13, 2005) (finding unconscionability in an arbitration agreement affecting an inmate where the arbitration agreement was presented when the Plaintiffs had a "condition of absence of liberty of choice which Defendant reasonably could have anticipated.")); *See also Reichert v. Keefe Commissary Network, LLC*, Case No. 3:17-CV-05848-RBL 2019 WL 2022678 at *7 (W.D. Wa. May 8, 2019) ("[T]he fact that Defendants controlled [inmates] account and their only option for reimbursement was a card likely precludes acceptance or constitutes duress or procedural unconscionability.")).

Upon installation of the JPay Kiosks, Plaintiffs were never told that, to use any services offered through the Kiosk, they would have to agree to an arbitration agreement that would waive their rights to a trial by jury and their rights to participate in a class action. Plaintiffs had no opportunity to negotiate the terms of the arbitration clause. *See* Rodriguez Decl. ¶22. Additionally, there were no JPay representatives present to explain to Plaintiffs the impact and the terms of the arbitration agreement. *See* Rodriguez Decl. ¶15. Plaintiffs were not even provided copies of the Agreement with the arbitration clause upon receiving their JPay tablets. *See* Rodriguez Decl. ¶21. In fact, Plaintiffs have never received a copy of Agreement or an opportunity to fully understand the arbitration agreement. *See* Rodriguez Decl. ¶¶14, 16. Plaintiffs were only presented with the Agreement upon first using the JPay Kiosk, and do not receive it by any other means. Plaintiffs are only allowed 15 minutes total to use the JPay Kiosk; a timer appears on the

---

[2] JPay is the exclusive provider for inmates receive money from family and friends for use to buy essential goods and services at their FLDOC facility commissary. The prior practice was for inmates to receive a paper receipt within 24 hours after money was deposited into their account. Now the exclusive method of information as to whether an inmate has received money is email accessed through the JPay Kiosk or wait until the end of the month for their bank statement.

6

screen upon login.  *See* Rodriguez Decl. ¶7.  Upon logging into the Kiosk, a popup window appears that is approximately 6 inches by 6 inches; within this window is the Agreement.  *See* Rodriguez Decl. ¶12.  The Agreement is approximately 20 pages and the arbitration clause is at the end of the Agreement buried amongst "legal jargon."  *See* Rodriguez Decl. ¶12.  Immediately, upon the appearance of the Agreement, are two boxes that state, "I accept" or "I do not accept."  *See* Rodriguez Decl. ¶13.  If "I accept" is not selected, inmates are immediately logged off of the Kiosk and cannot attempt to use it again for an hour. *Id*.  Given the inmate to Kiosk ratio, and amount of time an inmate has access, an inmate does not have the ability to use the Kiosk more than once a day.  *See* Rodriguez Decl. ¶¶6, 8.  Additionally, there are no means for an inmate to print a copy of the Agreement or the arbitration clause, to have time to fully understand it or ask questions.  *See* Rodriguez Decl. ¶14.

  Plaintiffs had no opportunity to understand, let alone negotiate, the arbitration agreement. When a consumer is precluded from a meaningful reading of an arbitration clause before agreeing to it, and the party relying on the arbitration clause does not explain the substance of the arbitration clause, courts find the arbitration provision procedurally unconscionable. *See Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 633-34 (Fla. Dist. Ct. App. 2008) (Arbitration clause was procedurally unconscionable when consumer was not told that clause was contained within the agreement, was not given a meaningful opportunity to read the agreement, and no attempt was made to explain the provisions to the consumer before she signed it.). Here, the manner in which the contract was executed robbed Plaintiffs of both the opportunity and the ability to know the terms they were agreeing to.

  The method for which the arbitration agreement was forced upon Plaintiffs left them with no meaningful choice.  The only way for Plaintiffs to reject JPay's arbitration clause was to completely forgo utilizing any of their services, which have become integral to an inmate's life

7

and existence. This concept was analyzed and rejected by the court in *Powertel, Inc. v.* Bexley, 743 So. 2d 570 (Fla. 1st DCA 1999). Rejecting the argument that customers could simply cancel their service to avoid an adhesive arbitration clause, forgoing use of equipment purchased specifically with their service, the *Powertel* court reasoned:

> Powertel prepared the arbitration clause unilaterally and sent it along to its customers as an insert to their monthly telephone bill. The customers did not bargain for the arbitration clause, nor did they have the power to reject it. One of the hallmarks of procedural unconscionability is the absence of any meaningful choice on the part of the consumer. Here, the customers had no choice but to agree to the new arbitration clause if they wished to continue to use the cellular telephone plans they had purchased from Powertel.
>
> It is true, as Powertel argues, that customers can avoid the effect of the arbitration clause by canceling their phone service and signing an agreement with another provider. The fallacy of that argument, however, is that switching providers would result in a loss of the investment the customers have in the agreements they made with Powertel. They purchased equipment that works only with the Powertel service and they have obtained telephone numbers that cannot be transferred to a new provider. It is reasonable to assume that some customers may suffer a great deal of inconvenience and expense to obtain and publish a new telephone number. Hence, it is no answer to say that the customers can simply switch providers. Many customers may have continued their service with Powertel despite their objection to the arbitration clause simply because they had no economically feasible alternative.

*Powertel, Inc.*, 743 So. 2d at 574–75. (internal citations omitted).

Here, Plaintiffs, and the inmates who are the members of the putative class, would suffer more than just inconvenience and expense. They will lose a critical service that is integral to their way of life and enhances their rehabilitation while incarcerated.[3] Plaintiffs cannot simply obtain the services offered by JPay elsewhere either, as they are the exclusive provider of their offered services to the FLDOC. Moreover, the Keefe digital media players have been made contraband.

---

[3] For many inmates their access to their music is critical, and a therapy of sorts. Keeping them free of corrective management, by allowing them to drown out the chaos and negative influences which accompany prison life.

Therefore, continued possession of them is expressly prohibited. Accordingly, any argument that Plaintiffs had another choice other than accepting the arbitration provision is illusory; all of which supports a finding of procedural unconscionability.

### ii. The Arbitration Agreement is Substantively Unconscionable

Unlike procedural unconscionability that addresses the process of making a contract, the substantive component focuses on the agreement itself. *Powertel*, 743 So. 2d at 574. A contract term is substantively unconscionable when the terms are unreasonable and unfair. *Id.*; *see also Kohl v. Bay Colony Club Condominium, Inc.*, 398 So. 2d 865, 868 (Fla. 4th DCA 1981). When an agreement requires customers to give up legal remedies it is an indicator of substantive unconscionability. *Powertel*, 743 So. 2d at 576. Here, the arbitration clause itself contains a fee shifting provision which is in opposite to the attorneys' fee provision of a claim under Florida's Unfair and Deceptive Trade Practices Act. Additionally, the Agreement itself contains an indemnification and hold harmless clause which completely exculpates JPay from liability.

The Agreement's Prevailing party provision is contrary to the statutory scheme of the Florida Deceptive an unfair Trade Practices Act § 501.201 *et seq*. ("FDUTPA"). Specifically, Fla. Stat. § 501.2105 which governs the award of attorney's fees to the prevailing party under FDUTPA gives the Court total discretion as to award prevailing party fees, and states as follows:

> (1)     In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, *may* receive his or her reasonable attorney's fees and costs from the nonprevailing party.
>
> (3)     The trial judge *may* award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in the affidavit.

Fla. Stat. § 501.2105(1), (3) (2018) (emphasis added).

Accordingly, FUDTPA does not mandate an award of attorney fees and expenses to the

prevailing party; rather, its language is discretionary. *Army Aviation Heritage Foundation and Museum, Inc. v. Buis*, 504 F.Supp.2d 1254. (N.D. Fla. Mar. 28, 2007).  In exercising that discretion, courts consider: (1) the scope and history of the litigation; (2) the ability of the non-prevailing party to pay fees; (3) whether an award of fees would deter future conduct by others in similar circumstances; (4) the merits of the parties' positions, including the non-prevailing party's culpability or bad faith; (5) whether the claim was frivolous, unreasonable, or groundless; (6) whether the non-prevailing party raised a defense mainly to delay the case; and (7) whether the case posed a significant legal question. *PODS Enterprises, LLC v. U-Haul Intern., Inc.*, 126 F.Supp.3d 1263 (M.D. Fla. Aug. 24, 2015).  The arbitration provision on the other hand makes an award of fees mandatory to the prevailing party.  The provision provides specifically:

> THE COST OF PROCEEDINGS UNDER THIS SECTION, INCLUDING WITHOUT LIMITATION, EACH PARTY'S ATTORNEYS' FEES AND COSTS, *SHALL* BE BORN BY THE UNSUCCESFUL PARTY.  THE PARTIES HEREBY CONSENT TO JURISDICTION AND VENUE IN MIAMI-DADE COUNTY AND WAIVE ANY OBJECTIONS THERETO.

[D.E. 25-2 ¶9(f)] (emphasis added, capitalization in original)

Additionally, the Agreement itself, in the paragraph following the arbitration provision, contains an exculpatory clause, disguised as an indemnification clause, which specifically entitles JPay to an award of its fees and costs regardless of whether they are the prevailing party or not.  The provision specifically states:

> **INDEMNIFICATION**. To the maximum extent permitted by law, you agree to defend, indemnify and hold harmless JPay, its affiliates and their respective directors, officers, employees and agents from and against any and all third party claims, actions, suits or proceedings, as well as any and all losses, liabilities, damages, *costs* and *expenses* (*including reasonable attorney's fees*) *arising out of or accruing from* (a) your breach of this Agreement, and (b) *your use of the Services*.

[D.E. 25-2 ¶10] (emphasis added, capitalization in original)

Florida courts have long held that a contract provision that exculpates its drafter from liability for

10

wrongdoing is substantively unconscionable and unenforceable. *See Prieto v. Healthcare & Ret. Corp. of Am.*, 919 So. 2d 531, 533 (Fla. 3d DCA 2005) (determining an arbitration clause unconscionable in part because it "deprive[d] the nursing home resident of significant remedies provided for by the statutes"); *Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87, 90 (Fla. 2d DCA 2003) (finding unconscionability to a claim raising FUDTPA as "[t]he arbitration agreement is also unenforceable because it has a provision for attorney's fees that is contrary to the statutes under which the Buyers sue")).

Like the *Holt* case, which had a provision in the arbitration agreement which was akin to an exculpatory clause that awarded fees and costs to the dealership for having to enforce any provision of the arbitration clause, so too is the situation in the instant case. Paragraph 10 of the Agreement specifically provides for JPay to recover all fees and costs from the Plaintiffs regardless of the statutory framework of the claims raised or the determination of the trier of fact. Accordingly, the arbitration agreement is unlawful as contrary to the statutory rights of Plaintiffs and substantively unconscionable. As the Eleventh Circuit noted in *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998), "the presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement, rendering the agreement completely unenforceable, not just subject to judicial reformation." *Id.* at 1058. "When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable." *Id.* at 1062.

### B.   Plaintiffs' Claims Arose Prior to any Claimed Effective Date of the Arbitration Agreement and is not Subject to Arbitration

#### i.   There is no Contractual Nexus to Plaintiffs' Claims and the Agreement

Should the Court reach the conclusion that the arbitration agreement is valid, the Court should nonetheless retain jurisdiction over this matter as the claims that are the subject of

Plaintiffs' action occurred prior to any receipt and accepting of the Agreement.  *See Gonzalez v. AA Varco Moving & Storage, Inc.*, Case No. 18-CV-62988 2019 WL 2245478 at *3 (S.D. Fla. Mar. 18, 2019) (refusing to apply an arbitration clause in part to claims that arose prior to the execution date of a valid arbitration agreement, and quoting the reasoning of the 11th Circuit in *Klay v. All Defendants*); *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) ("Because arbitration is strictly a matter of contract, [the court] cannot compel arbitration for disputed which arose during time periods in which no effective contract requiring arbitration was governing the parties.")).

Here, there is no contractual nexus to the claims raised by Plaintiffs.  Plaintiffs are not disputing the use of the JPay Tablet or the services offered on the JPay Kiosk.  Rather, it is JPay's actions that occurred *prior* to Plaintiffs' use of a JPay Kiosk or Purchase of a JPay Tablet that is the subject of Plaintiffs' claims; all of which occurred prior to the existence of an arbitration agreement.   Hence, there is no arbitrable issue.  *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).  Determining the need for a contractual nexus to determine whether a claim is to be submitted to arbitration the Supreme Court of Florida reasoned:

> [E]ven in contracts containing broad arbitration provisions, the determination whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause.

*Id*. at 638.

Applying this principal from the *Seifert* court, the court in *Careplus Health Plans, Ins. v. Interamerican Medical Center Group, LLC*, 124 So. 3d 968 (Fla. 3d DCA 2013) denied a motion to compel arbitration, finding there was "no significant relationship between the claim and the agreement containing the arbitration clause." *Id*. at 972.  The *Careplus Health* court explained a significant relationship:

> to exist between an arbitration provision and a claim if there is a 'contractual nexus' between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract."

*Id*. at 973 (quoting *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013); *see also Baptist Hospital of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298 (S.D. Fla. Apr. 29, 2019) (adopting the Report and Recommendation of Magistrate Judge O'Sullivan, who applying the reasonings in *Seifert* and *Careplus Health*, refused to apply an arbitration clause retroactively to claims that arose prior to the agreement)).

As stated above, there is no contractual nexus resulting in a significant relationship between Plaintiffs' claims and the arbitration agreement JPay is attempting to apply. The Agreement is actually irrelevant to Plaintiffs' claims. Plaintiffs are not bringing claims for their use or purchase of JPay products or services. The claims Plaintiffs have raised occurred prior to Plaintiffs purchasing JPay products or used their services. JPay is desperately trying to apply the arbitration agreement to Plaintiffs' claims. However, the express terms of the agreement itself explicitly render the agreement to not apply retroactively. *See Baptist Hospital of Miami, Inc.*, 376 F. Supp. 3d at 1310 (finding the arbitration provision not retroactive and the claims not to have a contractual nexus to the agreement with the arbitration clause).

      ii.     **<u>The Agreement is not Retroactive</u>**

The Agreement itself does not contain language that would make it apply retroactively. *See Thomas v. Carnival Corp.*, 573 F.3d 1113, 1119 (11th Cir. 2009) (refusing to retroactively apply an arbitration clause that stated "[a] and all disputes arising out of or in connection with this Agreement,…shall be referred to, and finally resolved by arbitration."). In *Thomas* the Eleventh Circuit explained:

13

> In contract interpretation, we can glean intent not only from what *is* said but what *is not* said. The New Agreement, which was quite thorough, notably did *not* specify that "disputes arising out of or in connection with this *or any previous* Agreement, including... Seafarer's service on this vessel shall be referred to, and finally resolved by arbitration." We think if the parties had intended retroactivity, they would have explicitly said so.")

*Id*. (emphasis added); *see also, Carter v. Doll House II, Inc.*, 608 Fed. Appx. 903, 904 (11th Cir. 2015) ("Because there is nothing in the October Agreement regarding retroactivity, we conclude the district court correctly refused to apply the arbitration provision to any claims that arose before October 2013"). Additionally, the Agreement which JPay claims controls, specifically states that it is not to be applied retroactively, even though it is not dated, by stating:

> This Agreement sets forth the *entire agreement* with respect to the subject matter hereof. This Agreement may not be *altered*, *supplemented* or *amended* by the use of any other document(s). Notwithstanding the forgoing, the rules and policies of the applicable correctional facility may also govern the sale and use of the Tablet.

[D.E. 25-2 ¶12] (emphasis added); *see also Berger v. Accounting Fulfillment Services, LLC*, Case No. 8:16-CV-744-JSM-JSS 2016 WL 3655347 at *4 (M.D. Fla. Jul. 8, 2016) (refusing to compel arbitration and refusing to retroactively apply agreements which contain an arbitration clause because the agreement stated, "This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings…"))

        Accordingly, as the Agreement is specifically not retroactive the arbitration clause does not apply to Plaintiffs' claims and the Motion should be denied.

### III. CONCLUSION

For the above stated reasons, JPay's arbitration agreement is procedurally and substantively unconscionable and therefore unenforceable under Florida law. In addition, Plaintiffs' claims are outside the scope of the Agreement, predate it and have no contractual nexus to the Agreement, and therefore are not subject to arbitration. Thus, JPay's Motion should be

denied in its entirety.

Dated: July 19, 2019

                                          Respectfully submitted,

                                          By: *Scott D. Hirsch*
                                          Scott David Hirsch
                                          **SCOTT HIRSCH LAW GROUP**
                                          7301 W Palmetto Park Road
                                          Suite 207A
                                          Boca Raton, FL 33433
                                          (561) 569-7062
                                          Email: scott@scotthirschlawgroup.com

                                          Joshua Michael Entin
                                          **ENTIN LAW GROUP P.A.**
                                          633 S. Andrews Avenue
                                          Suite 500
                                          Ft. Lauderdale, FL 33301
                                          954-761-7201
                                          Fax: 954-764-2443
                                          Email: josh@entinlaw.com

                                          Erika Denise Rodriguez
                                          **RODRIGUEZ LAW & ADVOCACY, P.A.**
                                          7301 W Palmetto Park Road
                                          Suite 207A
                                          Boca Raton, FL 33433
                                          561-800-4177
                                          Email: Erika@rodriguezlawpa.com

                                          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on July 19, 2019 with the Clerk of Court using CM/ECF which caused a copy to be served on all counsel of record.

                                          *Scott D. Hirsch*
                                          Scott D. Hirsch