UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14137-CIV-ROSENBERG/MAYNARD

MATTHEW RODRIGUEZ, and
JASON FUNK, *individually and
on behalf of those similarly situated*,

    **Plaintiffs,**

v.

JPAY, INC., and
KEEFE COMMISSARY NETWORK, LLC, and
MARK S. INCH, *in his official capacity as Secretary
of the Florida Department of Corrections*,

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT JPAY, INC.'S PETITION TO COMPEL BILATERAL ARBITRATION AND TO STAY ALL PROCEEDINGS [D.E. 25]

**THIS CAUSE** comes before me upon referral of the above-referenced motion. D.E. 25. Following a review of the motion, responsive briefings, the record, and governing authority, I recommend that the motion be granted for reasons set forth below.

## BACKGROUND

Plaintiffs commenced the present action based on allegations that digital media they purchased while serving time as inmates in Florida prisons was wrongfully taken by the Defendants. Plaintiffs are presently incarcerated by the Florida Department of Corrections ("FLDOC"). In 2011, the FLDOC implemented a digital music program which allowed inmates to purchase digital music players and download digital media content. D.E. 56 at 1-2. The FLDOC initially contracted with Defendant Keefe Commissary Network, LLC ("Keefe") to provide the digital music players and administer the digital media program. *Id.* at 2. In April of 2017, the

1

FLDOC entered into a new contract with a competing digital media provider, Defendant JPay, Inc. ("JPay"). *Id.* at 10. FLDOC informed Plaintiffs that the digital music players provided by Keefe would no longer operate with JPay's digital media program, so they would have to surrender the digital music players. *Id.* at 11-12. Any previously purchased digital media content had to be re-purchased through JPay. *Id.* at 13-14. Plaintiffs allege that FLDOC and JPay worked in concert to deprive Plaintiffs of their property for pecuniary gain. *Id.* at 12.

On April 25, 2019, Plaintiffs filed a class action complaint against Keefe and JPay. D.E. 1. Plaintiffs later amended the complaint to add Mark S. Inch, the Secretary of the FLDOC. D.E. 40. In their Second Amended Complaint ("the Complaint"), Plaintiffs make various claims arising from their lost access to digital media files they purchased from Keefe once FLDOC switched to JPay as the provider. D.E. 56. Plaintiffs allege two separate counts against JPay. *Id.* Count four alleges that JPay engaged in fraudulent inducement by falsely representing to Plaintiffs that none of the digital media files they purchased from Keefe could transfer to JPay's digital media devices. *Id.* at 25-26. Count six alleges that JPay violated the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") by disseminating false information about the digital media program to deceive Plaintiffs and maximize its profits. *Id.* at 27-28.

JPay now moves to compel Plaintiffs to submit to arbitration. According to JPay, before an inmate can use their digital services he or she must agree to and accept a Terms of Service and Warranty Policy ("the Terms of Service") which includes an agreement to arbitrate ("the Arbitration Agreement"). D.E. 25-1, Decl. of G. Campbell at ¶6.[1] The Arbitration Agreement, which is contained in paragraph 9(a) of the Terms of Service, states:

---

[1] According to JPay's Compliance Supervisor G. Campbell, Plaintiff Rodriguez first accepted JPay's Terms of Service and Warranty Policy on January 29, 2019. He then accepted the most recent version again on May 3, 2019. D.E. 25-1 at ¶9. Plaintiff Funk was not a named plaintiff in this action at the time JPay filed its motion to compel arbitration.

> 9. **DISPUTE RESOLUTION AND ARBITRATION AGREEMENT ("Arbitration Agreement")**
>
> **THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS**
>
> (a) Scope of the Arbitration Agreement. Mindful of the high costs of legal disputes, not only in dollars but in time and energy, <u>both you and JPay agree that any legal dispute between you and JPay, no matter the date of accrual, that relates to or arises in any way from (1) these Terms of Service and Warranty Policy and the provisions and disclosure therein, (2) any purchase by you, (3) any JPay product or service, and (4) any advertising, promotion or communication between you and JPay, shall be resolved through binding individual arbitration</u>. You understand and agree that you are waiving your right to sue or go to court to assert or defend your rights. However, either you or JPay may bring an individual claim in small claims court consistent with the jurisdictional and dollar limits that may apply, as long as it is brought and maintained as an individual claim. <u>The term dispute ("Dispute") means any dispute, action, claim, or other controversy between you and JPay, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis. Dispute will be given the broadest possible meaning allowable under law.</u>

D.E. 25-2 at ¶9(a) (emphasis added). JPay alleges that the Plaintiffs accepted the Arbitration Agreement, and therefore their claims against JPay must be submitted to arbitration. D.E. 25 at 5, D.E. 25-1.[2]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted to "declare 'a national policy favoring arbitration of claims that parties contract to settle in that manner.'" *Vaden v. Discover Bank*, 556

---

[2] Specifically, JPay alleges that lead Plaintiff Matthew Rodriguez accepted JPay's Terms of Service. At the time of JPay filed its Motion to Compel Bilateral Arbitration, the lead Plaintiffs were Matthew Rodriguez and Otis Clayton. When Plaintiffs amended their complaint on July 22, 2019 and on August 6, 2019, lead Plaintiff Otis Clayton was replaced with Plaintiff Jason Funk (D.E. 1; D.E. 40; D.E. 56).

U.S. 49, 58 (2009) (*quoting Preston v. Ferrer*, 552 U.S. 346 (2008)). Section 3 of the FAA requires that a court, upon motion by a party to an action in federal court, stay the action if it involves an "issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3. Questions of arbitrability must therefore be addressed "with a healthy regard for the federal policy favoring arbitrations." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to arbitrate a dispute that he has not agreed to arbitrate. The court is to make this determination by applying the federal substantive law of arbitrability and the FAA. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985). As a general rule, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability. *Id.* (Internal citations and quotations omitted).

Where the district court must interpret the contract, the court must apply standard principles of contract garnered from the applicable state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted); *see also Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 898 F.3d 1087, 1091-92 (11th Cir. 2018). When federal courts interpret an agreement to arbitrate, state contract law governs and directs the courts' analysis. *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1147 (11th Cir. 2015). Florida courts apply the common law plain-meaning rule when interpreting contracts. *See Lorusso v. Sun Holdings, LLC*, No. 8:14-CV-00822-EAK, 2015 WL 628793, at *2 (M.D. Fla. Feb. 12, 2015); *MDC 6 LLC v. NRG Inv. Partners, LLC*, 93 So.3d 1145, 1147 (Fla. Dist. Ct. App. 2012); *Jewelry Repair Enterprises, Inc. v. Ajani*, 33 So.3d 831, 833 (Fla. Dist. Ct. App. 2010).

## DISCUSSION

Plaintiffs oppose the motion to compel arbitration on two grounds. First, Plaintiffs allege that their claims against JPay are not subject to the Arbitration Agreement because they relate to

4

fraudulent representations made before Plaintiffs accepted JPay's Terms of Service. Second, Plaintiffs contend that the Arbitration Agreement is both procedurally and substantively unconscionable, and therefore unenforceable. JPay replies that even if the conduct underlying Plaintiffs' claims occurred prior to Plaintiffs' acceptance of the Terms of Service, by its own terms the Arbitration Agreement applies retroactively, and thus the claims must be submitted to arbitration. JPay also points out that the Arbitration Agreement delegates to the arbitrator, not the Court, the determination of disputes over the validity, enforceability and scope of the Arbitration Agreement.

> I. **The motion to compel arbitration should be granted because the Terms of Service delegate issues regarding the scope, validity and enforceability of the agreement to an Arbitrator, not the Court.**

Whether Plaintiffs' claims of fraudulent inducement and FUDTPA violation are subject to arbitration is a question of arbitrability. Questions of arbitrability encompass two types of disputes: (1) disputes over whether a particular claim is within the scope of an arbitration clause, and (2) disputes over who should decide that issue – an arbitrator or a court. *First Options of Chicago, Inc*, 514 U.S. at 942, 944; *Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1263 (S.D. Fla. 2019). This Court confronts both types of disputes here. The parties disagree about whether Plaintiffs' claims against JPay are governed by the Arbitration Agreement (i.e. scope) and about who should decide that question, an arbitrator or this Court.

The "question whether the parties have submitted a particular dispute to arbitration" is usually "an issue for judicial determination." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588 (2002) (internal quotation marks omitted). However, parties to a contract may agree in writing to have an arbitrator, rather than a court, determine the issue. *Bodine v. Cook's*

*Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016); *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009). This is done by including a delegation clause in the contract. The mere presence of a delegation clause in an arbitration agreement does not mandate that a claim must be submitted to arbitration, however. *Id.* A party must raise a delegation clause in order to rely upon it to avoid litigation in court. *Johnson v. Keybank Nat'l Ass'n*, 754 F.3d 1290, 1291–92 (11th Cir. 2014). "When parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir.2005).

JPay argues that the Arbitration Agreement contains a delegation clause that unmistakably delegates questions of arbitrability, including the scope and validity of the Arbitration Agreement, to the arbitrator. Section 9(e) of the Service Agreement provides in part:

> Except as specifically set forth below in 9(f), only the arbitrator is authorized to make determinations as to the <u>scope, validity, or enforceability</u> of this Agreement, including whether any dispute falls within its scope.

D.E. 25-2 at ¶9(e). (emphasis added). For its part, the exception in paragraph 9(f) provides that the federal and state courts in Miami and the Southern District of Florida have sole and exclusive authority to determine the validity of the contract's class action waiver provision. Other than that, "ALL DISPUTES, REGARDLESS OF THE DATE OF ACCRUAL OF SUCH DISPUTE, SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS." *Id.* at ¶9(f) (emphasis in original). Thus, except as it relates to the validity of the class action waiver, the Arbitration Agreement's delegation clause gives the arbitrator exclusive authority to resolve issues relating to arbitrability. *See In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1256 (11th Cir. 2012)

(noting where a delegation provision encompassed "any issue," that '[t]he agreement could not have been broader. Any dispute means all disputes, because 'any' means all.'") (quotation omitted).

A court must treat a delegation clause as valid and enforceable unless the party opposing arbitration challenges the enforceability of the delegation clause specifically. *See Parnell*, 804 F.3d at 1148 ("Because the Loan Agreement contains a delegation provision, we only retain jurisdiction to review a challenge to that particular provision. Absent a direct challenge, we must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability."). Here, Plaintiffs' arguments regarding unconscionability relate to the Arbitration Agreement as a whole, not the delegation clause itself. As such, this Court finds that the delegation clause is valid and enforceable. An arbitrator—not the district court—must decide the Arbitration Agreement's validity and scope. JPay's motion to compel arbitration should be granted and the action stayed pursuant to Section 3 of the FAA.

**II.     The motion to compel arbitration should be granted because Plaintiffs have not demonstrated that the Arbitration Agreement is unconscionable or that Plaintiffs' claims are outside the Arbitration Agreement's scope.**

The undersigned recommends that the motion to compel arbitration be granted based on the delegation clause. Should the District Court decline to adopt this viewpoint, however, there are additional reasons to compel arbitration in this case. For the sake of thoroughness, I will review Plaintiffs' remaining arguments. Plaintiffs argue that the Arbitration Agreement is invalid because it is unconscionable, and counts four and six are beyond the scope of the Arbitration Agreement. I do not find either argument persuasive.

### A. The Arbitration Agreement is not substantively unconscionable.

Under Florida law, to prevail on a claim that an arbitration agreement is unconscionable and therefore unenforceable, a party must establish that the contract is both procedurally and substantively unconscionable. *See Golden v. Mobil Oil Corp.,* 882 F.2d 490, 493 (11th Cir. 1989); *Murphy v. Courtesy Ford LLC* 944 So.2d 1131, 1134 (Fla. 3d. Dist. Ct. App. 2006); *Voicestream Wireless Corp. v. U.S. Commc'ns., Inc.,* 912 So.2d 34, 39 (Fla. 4th Dist. Ct. App. 2005). Procedural unconscionability "relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel Inc. v. Bexley,* 743 So.2d 570, 574 (Fla. 1st Dist. Ct. App.1999)). Substantive unconscionability is present when a contract's terms "are so 'outrageously unfair" as to "shock the judicial conscience." *Gainesville Health Care Ctr., Inc. v. Weston,* 857 So.2d 278, 285 (Fla. 1st Dist. Ct. App. 2003). Substantive unconscionability and procedural unconscionability need not exist in equal amounts for the contract to be unenforceable, but there must at least be a modicum of both. *Bhim,* 655 F. Supp. 2d at 1313.

To determine whether a contract is procedurally unconscionable under Florida law, courts look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Pendergast v. Sprint Nextel Corp.,* 592 F.3d 1119, 1135 (11th Cir. 2010). Plaintiffs make strong arguments on several of these factors. Undeniably, there was a disparity in bargaining power

between Plaintiffs, who are inmates, and JPay. If they wanted to access digital music from JPay, Plaintiffs had to accept JPay's Terms of Service, which were presented on a "take-it-or-leave-it" basis. The Terms of Service (which are ten pages long) were displayed on a small screen at a kiosk within the correctional institution. The Arbitration Agreement (which is two pages long) is toward the end of that document. Plaintiffs are not provided a written copy of the Terms of Service (or the Arbitration Agreement) prior to entering the agreement, and inmates have to either select "I accept" or "I do not accept" during the limited time they have access to the kiosk if they want to download digital music. Plaintiffs had no means to challenge or negotiate the Terms of Service or the Arbitration Agreement. As inmates, they are not free market consumers who could obtain digital media services from another provider if they found JPay's terms of service not to their liking. As a result, Plaintiffs' only options were to accept JPay's terms (including the agreement to arbitrate) or to forego digital media services entirely. *See Pendergast*, 592 F.3d at 1135 ("a central question in the procedural unconscionability analysis is whether the consumer has an absence of meaningful choice in whether to accept the contract terms"). These disparities militate toward a finding of procedural unconscionability.[3]

Plaintiffs have failed to show that the Arbitration Agreement is substantively unconscionable, however. Substantive unconscionability focuses "directly on those terms of the contract itself which amount to an outrageous degree of unfairness to the same contracting party." *Pendergast*, 592 F.3d at 1139 (*citing Steinhardt v. Rudolph*, 422 So. 2d 884, 889 (Fla. Dist. Ct. App. 1982)). Florida courts have described substantive unconscionability as an agreement that "'no man in his senses and not under delusion would make on the one hand, and as no honest and

---

[3] Plaintiff Rodriguez describes the difficulties he and other inmates have accessing the JPay kiosks, and reading and/or obtaining the Terms of Service in his Declaration filed at D.E. 36-1.

fair man would accept on the other.'" *Belcher v. Kier*, 558 So. 2d 1039, 1044 (Fla. Dist. Ct. App. 1990).

Plaintiffs contend that the Arbitration Agreement is substantively unconscionable because it mandates an award of attorneys' fees to the prevailing party, in contrast to the FUDTPA which provides an award of attorneys' fees to the prevailing party at the court's discretion. *See* Fla. Stat. § 501.2105(3) ("the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party."). This Court does not see how mandating attorneys' fees where the statutory scheme already provides a fee-shifting provision is outrageously unfair.

Plaintiffs also allege that the indemnification clause, which is not a part of the Arbitration Agreement, is substantively unconscionable. The Terms of Service provides that Plaintiffs agree to indemnify JPay for "third party claims, actions, suits or proceedings as well as…costs and expenses (including reasonable attorney's fees) arising out of or accruing from (a) <u>your breach of this Agreement, and (b) your use of the Services</u>." D.E. 25-2 at 11(emphasis added). Plaintiffs argue that this entitles JPay to an award of fees and costs regardless of whether JPay is the prevailing party and substantively exculpates JPay from all liability. I disagree. A plain reading of the indemnity clause demonstrates that it requires indemnification against third party claims that arise *as a result* of *Plaintiffs' use* of JPay services and *breach* of the agreement. This does not exculpate JPay from all claims as Plaintiffs suggest, nor is it substantively unconscionable.

**B. Plaintiffs' claims for fraudulent inducement (count four) and FUDTPA violation (count six) are not beyond the scope of the Arbitration Agreement.**

"The Federal Arbitration Act presumes that claims are arbitrable 'unless it is clear that the arbitration clause has not included them." *Gonzalez v. AA Varco Moving & Storage, Inc.*, No. 18-62988-CIV, 2019 WL 2245478, at *2 (S.D. Fla. Mar. 18, 2019) (*quoting Paladino v. Avnet*

*Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998). Courts have refused to compel arbitration of claims that arose outside of the scope of the arbitration agreement. *Carter v. Doll House II, Inc.*, 608 Fed.Appx. 903, 904 (11th Cir. 2015) (declining retroactive application where the arbitration clause referred only to any dispute regarding the agreement); *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1119 (11th Cir. 2009) (denying retroactive application of the new employment agreement which was limited to claims in connection to the new agreement); *Klay v. All Defendants*, 398 F.3d 1191, 1203 (11th Cir. 2004) (refusing to compel arbitration of disputes "which arose outside of the effective dates of the contracts containing arbitration agreements."). However, where the arbitration clause is sufficiently broad or contains language authorizing retroactive application, the Eleventh Circuit has found that it may include claims that occurred before the contract containing the arbitration agreement was entered. *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1271, fn. 1 (11th Cir. 2017); *Kidd v. Equitable Life Assur. Soc. Of U.S.*, 32 F.3d 516, 518 (11th Cir. 1994); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967).

Plaintiffs argue that counts four and six accrued before Plaintiffs accepted the Terms of Service so they cannot be subject to the Arbitration Agreement provided therein. The Supreme Court's decision in *Prima Paint* offers some insight. In *Prima Paint*, the plaintiff sought to rescind a contract on the grounds that execution of the contract was fraudulently induced. *Prima Paint*, 32 F.3d at 398. The defendant, on the other hand, sought to invoke the contract's arbitration clause and moved to stay the action pending arbitration. *Id.* at 398–99. Agreeing with the defendant, the *Prima Paint* Court concluded that the arbitration clause's language, which covered "(a)ny controversy or claim arising out of or relating to this Agreement, or the breach thereof[]" was

11

"easily broad enough to encompass" a claim of fraudulent inducement. (internal quotations omitted). *Id.* at 406.

The Arbitration Agreement at issue here includes similarly broad language. It covers "any legal dispute" between inmates and JPay "no matter the date of accrual, that relates to or arises in any way from," (1) the Terms of Service, "(2) any purchase by you, (3) any JPay product or service, and (4) any advertising, promotion or communication between you and JPay[.]" D.E. 25-2 at ¶9(a). This language encompasses Plaintiffs' claims of fraud in the inducement and FUDTPA violations for several reasons. First, the 'relates to or arises from' language is similar to what was present in *Prima Paint*. The language here goes even further, however, by applying to claims "no matter the date of accrual." This suggests that the arbitration provision applies to claims that accrue before as well as after inmates enter the Terms of Service. Second, the Arbitration Agreement specifically references disputes relating to or arising from "advertising, promotion[s] or communication[s]," between JPay and inmates. Counts four and six are based on advertising, promotions and communications JPay made to inmates to persuade them to purchase JPay products and services. As a result, these claims fall squarely within the language of the agreement. Third, the Arbitration Agreement defines "dispute" broadly to include "any dispute, action, claim, or other controversy between you and JPay, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis." Thus, the provision is clear that it applies not only to contract claims based on the Terms of Service, but also to related tort and statutory claims such as those present in counts four and six. As a result, I am persuaded that Plaintiffs' claims are within the scope of the arbitration agreement.

## CONCLUSION

**ACCORDINGLY**, I recommend that Defendant JPay's Motion to Compel Arbitration, D.E. 25, be **GRANTED**. I further recommend that this case be **STAYED** pending resolution of arbitration.[4]

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. If a party does not intend to object to this Report and Recommendation, that party shall file a notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this ___ day of October, 2019.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

---

[4] In their Surreply, D.E. 86, Plaintiffs request for the first time that if the Court is inclined to grant JPay's motion, it transfer Plaintiffs' individual claims to small claims court pursuant to ¶ 9(a) of the Arbitration Agreement instead of compelling arbitration. D.E. 86. Because this issue was raised for the first time in a Surreply, JPay had no opportunity to respond. As a result, I will not address this request. Both parties are free to re-raise and/or address the request in any objections filed to this Report and Recommendation.