UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14137-CIV-ROSENBERG/MAYNARD

MATTHEW RODRIGUEZ, and
JASON FUNK, *individually and
on behalf of those similarly situated,*

    Plaintiffs,

v.

JPAY, INC., and
KEEFE COMMISSARY NETWORK, LLC, and
MARK S. INCH, *in his official capacity as Secretary
of the Florida Department of Corrections,*

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT MARK S. INCH'S MOTION TO DISMISS [D.E. 72]

**THIS CAUSE** comes before the Court upon the above referenced Motion. Following a review of the Motion, D.E. 72, and responsive pleadings, D.E. 82, 88, and having held a hearing on September 30, 2019, this Court recommends that this Motion be denied for reasons set forth below.

### BACKGROUND

The named Plaintiffs are inmates serving life sentences in Florida prisons. D.E. 56 at ¶¶1-2, 65 & 73. They allege that they purchased digital music players and digital media (music and audiobooks) from Keefe Commissary Network, LLC (Keefe), which contracted with the Florida Department of Corrections (FDOC) to provide digital media services to inmates. *Id.* at ¶¶14 & 31. They made these purchases after receiving advertisements stating that they would "always own" any music purchased through the digital media program. *Id.* at ¶¶62-63, 69 & 70. FDOC

1

contracted with Keefe from at least 2011 through 2017. *Id.* at ¶¶14, 16, 19, 31, 34, 35, 63 & 70. Inmates could purchase one of two media players from Keefe, as well as various accessories. *Id.* at ¶20. To buy music, inmates purchased prepaid media credits using a FDOC MP4 Order Form available at each FDOC institution. *Id.* at ¶¶21-22. Inmates could then use the prepaid credits to purchase songs or audiobooks by connecting their Keefe media players to Keefe kiosks located within the correctional institutions. *Id.* at ¶23. The kiosks allowed them to access Keefe's music library and download music to their own media players, or to store their purchases in a cloud-based library provided by Keefe. *Id.* at ¶¶23-24. Inmates could transfer to their media players only the number of songs that would fit within the player's memory capacity, but there was no limit on the number of credits, files or songs that inmates could store in their cloud-based library. *Id.* at ¶24.

When buying music from Keefe, inmates were provided the terms of sale in the form of an End User License Agreement ("End User Agreement"). The End User Agreement is attached to the Complaint as Exhibit D. *Id.* at ¶26; D.E. 56-4. None of the materials provided to inmates informed them that purchased music would be available to them only during the continuation of the contract between FDOC and Keefe. *Id.* at ¶¶32-33.

In April 2017, FDOC terminated Keefe's contract and entered a new contract with a competing provider, JPay, Inc. ("JPay"). *Id.* at ¶36. Under JPay's program, inmates could purchase digital music from JPay and download it onto tablets sold by JPay. *Id.* at ¶37. Inmates were not, however, allowed to transfer music purchased from Keefe to the JPay tablets. *Id.* at ¶¶43, 50 & 57. Any music previously purchased from Keefe had to be re-purchased from JPay if inmates wished to listen to it on their JPay tablets. *Id.* at ¶51. Further, in or around January 23, 2019, FDOC forced inmates to surrender their Keefe media players, thereby eliminating inmates' access to music stored on the Keefe media players or within the inmates' cloud-based library. *Id.*

at ¶¶44, 46 & 52. This was done in order to maximize profits for JPay. *Id.* at ¶56. FDOC gave inmates two options for disposing of their Keefe media players. They could send the player to Keefe with a payment of $24.95 to have the security features disabled and the player mailed to someone outside the prison whom the inmate designated, or, for the same fee, they could send the player to Keefe to transfer all the songs onto a CD that would then be mailed to the inmate's designee. *Id.* at ¶47, 65 & 73. Any music stored in the inmates' cloud-based library (but not on the media player) was not retrievable. *Id.* at ¶49. Those files were simply "gone forever." *Id.* Plaintiffs say the options provided were inadequate because they purchased music "to listen to and enjoy *while incarcerated* – not at some unspecified time in the future." *Id.* at ¶48. Many of the inmates, including the named Plaintiffs, are serving life or lengthy sentences. *Id.* "For these inmates in particular, the option to mail out their property [was] [a] completely illusory solution." *Id.*

On April 25, 2019, Plaintiffs filed a class action complaint against Keefe and JPay. D.E. 1. Plaintiffs later amended the complaint to add Mark S. Inch, the Secretary of the FDOC in his official capacity. D.E. 40. On August 6, 2019, Plaintiffs filed a Second Amended Complaint (the "Complaint") alleging nine counts against Keefe, JPay and FDOC.[1] D.E. 56. Counts one through seven allege claims against Keefe and JPay. Counts eight and nine allege claims under 42 U.S.C. § 1983 against FDOC for taking inmates' property in violation of the Fifth Amendment and violating inmates' substantive due process rights in violation of the Fourteenth Amendment. *Id.* at ¶¶145-171.[2]

---

[1] Because Secretary Inch is sued in his official capacity, this Report and Recommendation will refer to him as FDOC for ease of reference.

[2] Plaintiffs also attach several exhibits to the Complaint. These include contract amendments between FDOC and Keefe (Exhibits A and C); FDOC's invitation to negotiate for contractual services (Exhibit B); the Keefe End User Agreement (Exhibit D); an advertisement for Keefe's digital music program (Exhibit E); an excerpt from a Keefe

3

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted. When considering such a motion, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" so as to "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether the plausibility standard has been met, a court must consider the pleading as a whole and must draw on judicial experience and common sense. *Id. See Speaker v. U.S. Department of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n. 11 (11th Cir. 2005) (per curiam) (stating that, in a Rule 12(b)(6) context, "[w]e read the complaint as a whole").

A plaintiff is not required to detail all of the facts on which his claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim is and the grounds on which it rests. *Twombly*, 550 U.S. at 555–56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The allegations must, however, be enough to raise a right to relief above the speculative level. *Id.* The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 662. "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on

---

media player user guide (Exhibit F); the contract between FDOC and JPay (Exhibit G); a Notice of Rulemaking for Rule 33-602.201 (Exhibit H); and grievances filed by Plaintiffs and FDOC's responses thereto (Exhibit I).

4

'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). If a complaint is filed with exhibits, a court must also consider the facts derived from the exhibits. Where the facts in the exhibits contradict the allegations in the complaint, the exhibits control. *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007); *Weiner v. Federal Insurance Company*, 2011 WL 13229316 (S.D. Fla. Dec. 16, 2011).

## DISCUSSION

FDOC makes four arguments in support of its motion to dismiss. First, FDOC argues that venue in this forum is improper because Plaintiffs' claims are subject to a forum selection clause requiring litigation in Missouri. Second, FDOC contends that counts eight and nine fail to state claims against FDOC for violation of Plaintiffs' constitutional rights. Third, FDOC contends that the Complaint fails to state a claim for injunctive relief. Fourth, FDOC claims Plaintiffs have failed to exhaust their administrative remedies before filing this lawsuit. The Court will address each of these arguments in turn.

### A.   Venue

FDOC alleges that Plaintiffs have brought this action in the wrong venue because the End User Agreement contains a provision requiring "any claim or controversy in any way arising out of or relating to this terms of sale [to] be filed in a court of competent jurisdiction sitting in St. Louis County Missouri." D.E. 56-4 at ¶19. The End User Agreement, however, is between Keefe and inmate purchasers of digital media downloads. FDOC is not a party to the agreement. A forum selection clause ordinarily cannot be invoked by or against a non-signatory except in limited

5

circumstances. *Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242 (11th Cir. 2011); *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009). These limited circumstances, which courts first recognized in cases concerning arbitration agreements,[3] include situations involving equitable estoppel, agency or related principals, or where the non-signatory is an intended the third-party beneficiary. *Liles*, 631 F.3d at 1256. Although FDOC's attorney claimed at oral argument that FDOC was a "partner" with Keefe, there is no evidence before the Court that FDOC falls within any exception. As such, as a non-signatory, FDOC cannot invoke the forum selection clause contained within the End User Agreement, and FDOC's motion to dismiss and/or transfer venue on this basis should therefore be denied.[4]

### B.   Constitutional Claims

In counts eight and nine, Plaintiffs claim FDOC violated the Takings Clause of the Fifth Amendment[5] as well as their substantive due process rights under the Fourteenth Amendment[6] of

---

[3] The Eleventh Circuit has applied law from arbitration cases to forum-selection clauses, which suggests that "any of the established theories for allowing a non-signatory to invoke a contract's arbitration clause should also be sufficient to allow a non-signatory to invoke a forum-selection clause." *Liles*, 631 F.3d at 1256, n. 23.

[4] To support its argument that venue should be transferred to Missouri, FDOC brings to the Court's attention the case of *Andrew Gomez v. Dept of Corrections*, Case No. 2019 CA 182, Second Judicial Circuit in and for Leon County, Florida (Sept. 19, 2019) (Flury, J.). D.E. 82-1. In that case a Florida inmate sued FDOC seeking declaratory and injunctive relief regarding his right to maintain possession of his Keefe media player while incarcerated. In his ruling, Judge Flury commented that "[t]o the extent that Plaintiff Gomez seeks to litigate a claim against ACCESS or Keefe, who have not been named as parties to this suit, arising from the End User License Agreement, these claims must be dismissed for failure to file in the proper venue. According to the contract in dispute the proper forum for these claims is Saint Louis County, Missouri." *Id.* at 2 (emphasis added). FDOC contends that this supports its view that Plaintiffs' claims against FDOC must be brought in Missouri. D.E. 82. This Court disagrees. Judge Flury specifically limited his comments about the forum selection clause's application to claims against ACCESS or Keefe, which are parties to the End User Agreement. FDOC is not a party to the agreement and cannot invoke the forum selection clause.

[5] The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This prevents the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). "[T]he Takings Clause bars the state from taking private property without paying for it, no matter which branch is the instrument of the taking." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 130 S. Ct. 2592, 2602 (2010).

[6] Substantive due process "protects against the arbitrary and oppressive exercise of government power." *Waldman v. Conway*, 871 F.3d 1283, 1292-93 (11th Cir. 2017).

the United States Constitution. FDOC argues that these counts should be dismissed for three reasons: (1) under copyright law, Plaintiffs do not <u>own</u> the digital music involved so they were not deprived of any ownership rights; (2) assuming Plaintiffs do have an ownership interest, FDOC's policy change affected Plaintiffs' right to possess, not own, the digital music; and (3) Plaintiffs' allegations do not "shock the conscious."

The only case the undersigned is aware of that addresses this issue exactly is *Demler v. Inch*, Case No. 4:19cv94-RH-GRJ (N.D. Fla. Sept. 25, 2019). In *Demler*, a Florida inmate sued FDOC for changing its policy from allowing inmates to buy digital media and players from Keefe with FDOC's full approval and participation to prohibiting inmates from accessing the music and media players they purchased. *Id*. at *2. FDOC moved for summary judgment on the inmate's Fifth and Fourteenth Amendment claims. United States District Judge Robert Hinkle denied FDOC's motion, stating:

> [FDOC's] motion ignores a critical part of Mr. Demler's claim. The media player and downloads were not just property that Mr. Demler acquired on his own. Here, [FDOC] participated in sale of the property to inmates, represented to inmates that they would be allowed to use the property in the facility permanently, and took a cut of the sales price. Or so Mr. Demler asserts. None of the [FDOC's] cited cases involve similar facts.

*Id*. at *6.

The same can be said for this case. FDOC directly participated in inmates' purchase of digital music from Keefe and received a portion of the profits. D.E. 56 at ¶35. FDOC told inmates they would "always own" music they purchased before prohibiting them from accessing that very same music. D.E. 56 at ¶¶27-28; D.E. 56-5, Ex. E. In this respect, *Demler* and this case differ from the other cases FDOC cites in its memorandum. The only case that is somewhat similar is *Sorrentino v. Godinez*, 2013 WL 5487422 at *4-7 (N.D. Ill. Oct. 3, 2013). In *Sorrentino*, the Illinois Department of Corrections allowed inmates to purchase typewriters and fans from the

commissary before changing its course and prohibiting these items. Inmates were given the option to send their typewriters and fans to friends or family outside the correctional facilities. The district court dismissed the case based on the view that this was not a taking under federal law. Judge Hinkle distinguished *Sorrentino* as follows:

> *Sorrentino* is a nonbinding district court decision. But it is not on point anyway. There are three differences between Mr. Demler's claims and those involved in *Sorrentino* and the other cases cited by [FDOC].
>
> First, Mr. Demler alleges [FDOC] affirmatively represented that he would be able to possess his MP3 player and music permanently—or at least that Keefe made this representation and [FDOC] is responsible for it.
>
> Second, this case involves not just physical property—a typewriter, fan, or MP3 player, for example—but a license to play music that is not otherwise owned. When a typewriter is sent out of a facility, it is still owned and can be not only used but sold. The inmate can recover the value of the property. Downloaded music of the kind at issue, in contrast, cannot be sold; the right to use the music is all there is, and the right is not transferable. Takings law has long recognized the difference between depriving an owner of all, rather than just some, of a property's value. *See, e.g., Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 703, 713 (2010) (while discussing "general principles" of takings jurisprudence, stating that a taking may occur when the state "deprives [an owner] of all economically beneficial use of his property") (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)).
>
> Third, the record suggest that, contrary to its argument, [FDOC's] new policy will not allow Mr. Demler to send all the disputed property to relatives or others outside the facility. The MP3 player stores some of Mr. Demler's purchased music. But the MP3 player's capacity is limited. Some of Mr. Demler's purchased music is stored not on the MP3 player but on the cloud. Only Mr. Demler can access that music. Under [FDOC's] new policy, the music on the cloud is gone—not available to Mr. Demler or anyone else. Taking Mr. Demler's interest in purchased music he was told would be permanently available, without just compensation, if that is what occurred, may indeed be unconstitutional. [FDOC] has cited no authority to the contrary.
>
> *Id.* at *6-8.

The same reasoning applies here. FDOC participated in affirmatively representing to inmates that they would "always own" music they purchased. D.E. 56 at ¶¶ 27-28; 56-5, Ex. E. Like Mr. Demler, Plaintiffs are not suing for a loss of physical property. They are suing for lost

8

access to digital files – access that is nontransferable, non-assignable and which cannot be resold. D.E. 56-4, Ex. D at ¶¶8 & 15. Under FDOC's new policy, not only can Plaintiffs not listen to their digital music, they cannot receive any economic benefit from it. They are therefore deprived of its entire value. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 105 (1978) (a regulation that frustrates "distinct investment-backed expectations" may constitute a taking); *see also Bickerstaff Clay Products Co., Inc., v. Harris County, Ga. By and Through Bd. of Com'rs*, 89 F.3d 1481, 1489 (11th Cir. 1996) ("The [Takings] clause applies in any case in which government action renders private property worthless."). Further, Plaintiffs have no options regarding music stored in the cloud-based library Keefe provided. These files cannot be sent to relatives or friends outside the prison – they are "simply gone forever." D.E. 56 at ¶49. In *Demler*, Judge Hinkle found these factors sufficient to deny summary judgement. This Court also finds them sufficient to deny FDOC's motion to dismiss.

As to FDOC's copyright arguments, the fact that Plaintiffs are not the content owners of the media involved is not in dispute. Plaintiffs do not claim to own the copyrighted works themselves, but say they owned a right to use and/or access the works once purchased, and that right has been taken without just compensation.[7] FDOC cites no law to support its position that Plaintiffs' right to use or access digital media they purchased is not property that could be subject to a taking.

---

[7] *See, e.g.,* D.E. 56 at ¶21 ("Under the Digital Music Player Program, FDOC inmates also had the ability to purchase digital media files – including music and audiobooks – for use[.]") (emphasis added); ¶26 (the End User Agreement stated that inmates were "entitled to export, burn, or copy permanent downloads solely" for their "personal, noncommercial, and entertainment use") (emphasis added); ¶44 (FDOC and JPay worked together to unlawfully deprive inmates of their property, "by eliminating their access to" digital media purchased from Keefe) (emphasis added); ¶46 ("[FDOC] was actively denying inmates access to their legally purchased 'permanent' downloads.") (emphasis added); D.E. 56-4, Ex. D at ¶8 (inmates purchased "a nonexclusive, nontransferable right to use the permanent download[s]") (emphasis added).

FDOC also contends that the facts in the Complaint do not "shock the conscious" as required for a substantive due process claim. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. The Supreme Court has interpreted the amendment to have two components – procedural and substantive. The procedural component protects individuals from state action affecting private liberty or property interests without due procedural safeguards. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The substantive component protects against "certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992) (quotation omitted). Substantive due process protects "fundamental" rights, which are those rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Most, but not all, of the rights enumerated in the Bill of Rights are fundamental rights protected by the substantive component of the Due Process Clause. *See Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir. 1995). Certain unenumerated rights, such as the right to privacy, merit substantive due process protection as well. *Id.* (citation omitted). Rights that are created by state law, such as tort and employment law, are not afforded substantive due process protection, however. This was recognized in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), where the Eleventh Circuit emphasized that "substantive due process rights are created only by the Constitution." *Id.* at 1556 (*quoting Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985)). Plaintiffs' rights in this case evolve from contract and property law. Thus, they are state created rights not generally afforded substantive due process protection.[8]

---

[8] Consequently, this Court disagrees with Plaintiffs' assertion in the Complaint that they have a "fundamental right to property in their purchased digital media files." D.E. 56 at ¶162.

10

There is an exception, however, for substantive due process claims involving legislative state action. *Id.* at 1557, 1560. Indeed, the *McKinney* Court deemed it crucial, when discussing substantive due process, to recognize the distinction between "legislative" state action and "non-legislative" or "executive" acts. *Id.* at n. 9. As *McKinney* explains:

> Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations. Legislative acts, on the other hand, generally apply to a larger segment of – if not all of – society; laws and broad-ranging executive regulations are the most common examples. The analysis, and the substantive/procedural distinction discussed above, that is appropriate for executive acts is *inappropriate* for legislative acts. ... Legislative act cases therefore are distinguishable from the case at hand.

*Id.* (emphasis in original).

All of the cases FDOC cites use the "shocks the conscience" test in evaluating executive action by prison authorities. *See, e.g., Morefield v. Smith*, 404 Fed. Appx. 443 (11th Cir. 2010) (applying "shocks the conscience" standard to inmate's allegation that Georgia prison authorities deprived him of legal documents in violation of substantive due process); *Newman v. Coats*, 2009 WL 1260020, *2 (E.D. Mich. April 30, 2009) (applying "shocks the conscience" standard to prisoner's claim that prison staff violated his substantive due process rights by confiscating his personal property); *Tanney v. Boles*, 400 F. Supp.2d 1027, 1041 (E.D. Mich. 2005) (applying "shocks the conscience" test to inmate's claim that case manager temporarily restricted his phone privileges); *Booth v. King*, 346 F.Supp.2d 751, 760 (E.D. Pa.2004) (applying "shocks the conscience" test to inmate's claim that prison officials were verbally abusive, tampered with his mail, restricted his law library use, and confiscated his property and medication). The extent to which these cases apply to legislative action by prison authorities is less clear. "While the actions of some government officials can easily be categorized as legislative or executive," at other times,

"sorting out which hat [officials] were wearing when they made a decision can be difficult." *Lewis v. Brown*, 409 F.2d 1271, 1273 (11th Cir. 2005). Plaintiffs claim FDOC acted in its "legislative capacity" when it altered its policies and rules about the digital media program. D.E. 56 at ¶167. FDOC's rule changes were legislative in nature because they had "broad-ranging impacts for large segments of the FDOC inmate population, rather than being directed at a particular person." *Id.* Plaintiffs' claim that these rule changes were arbitrary and capricious is plausible given the facts alleged in the Complaint. *See, e.g., id.* at ¶¶ 6, 46 at fn. 6, 54-57, 64, 71, 150, 166-169. FDOC's memorandum provides no legal authority for the proposition that its legislative acts are not actionable unless they rise to a conscience shocking level. That is not to say that prevailing on count nine will be easy for Plaintiffs. The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open ended." *McKinney*, 20 F.3d at 1556 (*quoting Collins*, 503 U.S. at 115). This may be particularly true in the prison context because "courts are ill equipped to deal with" prison administration and reform, and have "additional reason to accord deference to the appropriate prison authorities." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (*quoting Procunier v. Martinez*, 416 U.S 396, 404-05 (1987). At this stage of the case, however, all reasonable inferences are to be drawn in Plaintiffs' favor. It is therefore recommended that the motion to dismiss count nine should be denied.

### C. Injunctive Relief

To obtain a preliminary injunction, a movant must show "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (quotation omitted).

FDOC argues that Plaintiffs fail to meet the irreparable harm requirement. Whether Plaintiffs are entitled to injunctive relief, however, is not the question on a motion to dismiss. At this stage, the question is whether Plaintiffs *may* seek injunctive relief at all, or whether a legal bar exists to them doing so. As a general matter, injunctive relief is available in the absence of legal remedies. *See Browning v. Buda*, No. 3:18-CV-757-J-34JRK, 2019 WL 2232121, at *2 (M.D. Fla. May 23, 2019) (noting that, "the availability of money damages typically restricts an award of injunctive relief."). FDOC points out that Plaintiffs in this case have legal remedies available to them, as evidenced by the fact that the Complaint seeks monetary damages from the co-defendants.[9] While this may be true, it does not preclude Plaintiffs from seeking equitable relief from FDOC. Plaintiffs are permitted to plead alternative forms of relief. Fed.R.Civ.8(a); *Rozier v. Hartford Ins. Co. of the Midwest*, No. 14-CIV-20547, 2014 WL 6751639, at *4 (S.D. Fla. Dec. 1, 2014); *Pierson v. Orlando Health*, No. 608CV466ORL28GJK, 2010 WL 11508729, at *1 (M.D. Fla. Aug. 30, 2010). "Under modern pleading rules, equitable and legal causes of action may travel in the same complaint." *Weinstein v. Aisenberg*, 758 So. 2d 705, 710 (Fla. Dist. Ct. App. 2000).

In responding to the motion to dismiss, Plaintiffs point out that they have no adequate legal remedy against FDOC because the Eleventh Amendment bars suits for monetary damages against state agencies. *Wayne v. Fla. Dep't of Corr.*, 157 F. Supp. 3d 1202, 1204 (S.D. Fla. 2016). The

---

[9] D.E. 56 at ¶¶ at (b)-(d).

Eleventh Amendment does not, however, "insulate state officials acting in their official capacities from suit in federal court, at least to the extent the complainant seeks prospective injunctive relief." *Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995). Since Plaintiffs have no adequate legal remedy against FDOC, the motion to dismiss their request for injunctive relief should be denied.

### D. Exhaustion

FDOC moves to dismiss because Plaintiffs failed to exhaust administrative remedies prior to bringing this action as required by the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e *et seq*. "The PLRA requires inmates to exhaust administrative remedies before filing a lawsuit" under section 1983. *Bryant v. Rich*, 530 F.3d 1368, 1372 (11th Cir. 2008) (citation omitted). Congress passed the PLRA with the intention of providing prison officials time to address grievances internally before an inmate could file suit in federal court. *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). "The PLRA requires 'proper exhaustion', which means a prisoner must comply with the 'critical procedural rules' governing the grievance process applicable to the prison." *Wilson v. Thompson*, 223 F. Supp. 3d 1271, 1273–74 (S.D. Fla. 2016) (*quoting Woodford v. Ngo,* 548 U.S. 81, 95 (2006). While the PLRA establishes the exhaustion requirement, it is state law that governs what steps are needed to exhaust. *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Therefore, when a state provides a grievance procedure for its prisoner, an inmate alleging a harm from prison conditions must exhaust that procedure before bringing a section 1983 suit. *Bryant*, 530 F.3d at 1372–73.

FDOC says Plaintiffs "could have sought the same relief they seek in this litigation" by giving FDOC the opportunity to address the matter internally before bringing the current action. Yet, Plaintiffs attached evidence to the Complaint showing that they filed grievances with various prison officials, beginning with the assistant warden and ending with the Secretary of the

Department of Corrections – the highest position in the FLODC. D.E. 56-9, Ex. I. FDOC fails to say what more Plaintiffs could have done other than that they should have petitioned FDOC to amend the Authorized Property List prohibiting Keefe media players.[10] Yet, Plaintiffs are also suing for injunctive relief that will restore their access to the digital media files they purchased. D.E. 56 at ¶(g). As to that, when Plaintiffs attempted to challenge that issue administratively—that is, to re-gain access to their previously purchased files—Plaintiffs were told by prison officials that they "have no options." D.E. 56-9, Ex. I. FDOC also argues that the PLRA does not limit the exhaustion requirement to internal administrative remedies only, but at times requires prisoners to engage in external remedies as well. It is true that in certain types of cases a plaintiff is required to take additional steps after exhausting internal procedures. *Burgess v. Garvin*, No. 01 CIV. 10994 (GEL), 2004 WL 527053, at *2 (S.D.N.Y. Mar. 16, 2004). However, the cases FDOC cites in support of this argument involve suits under statutes such as the American with Disabilities Act or the Rehabilitation Act, for which an inmate seeking relief must also exhaust Department of Justice remedies before bringing a cause of action in federal court. *Haley v. Haynes*, No. CV210-122, 2012 WL 112946, at *1 (S.D. Ga. Jan. 12, 2012). The present case does not involve that type of statute. The majority of prisoner complaints can be exhausted through internal administrative procedures and FDOC fails to provide any evidence that there is an exception present here. *Burgess*, 2004 WL 527053 at *2. FDOC's motion to dismiss the Complaint on this basis should therefore be denied.

---

[10] FDOC also fails to set out for the Court the applicable grievance procedure. It is the defendant's burden to prove that the plaintiff did not exhaust his available administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

## CONCLUSION

**ACCORDINGLY**, the undersigned recommends to the District Court that Defendant FDOC's Motion to Dismiss, D.E. 72, be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. If a party does not intend to object to this Report and Recommendation, that party shall file a notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 30th day of October, 2019.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE